J-S05044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH OESTERLE THIERS | : | |
| | : | |
| Appellant | : | No. 2137 EDA 2019 |

Appeal from the PCRA Order Entered June 24, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0008292-2013

BEFORE:  BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 02, 2021**

Joseph Oesterle Thiers appeals the denial of his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm on the basis of the PCRA court's opinion.

In 2015, Thiers entered an open guilty plea to four counts of Aggravated Assault[1] for causing serious bodily injury to two victims and for attempting to cause serious bodily injury to two police officers. Thiers entered his guilty plea in light of the Commonwealth's agreement not to seek the mandatory minimum sentence of 20 to 40 years for shooting at a police officer, or the mandatory minimum sentence for use of a deadly weapon. The Commonwealth offered Thiers an aggregate sentence of 15 to 30 years' imprisonment, which he refused in favor of his open plea. Thereafter, the trial

---

[1] 18 Pa.C.S.A. § 2702(a)(1).

court sentenced Thiers to an aggregate sentence of 22 to 44 years' imprisonment and, pursuant to the plea agreement, marked the remaining charges, including multiple counts of criminal attempt to commit homicide and simple assault, as nol prossed. Thiers filed a timely post-sentence motion and request to modify his sentence, and the trial court denied the motion in October 2015. This Court affirmed Thiers' judgment of sentence on November 29, 2017. Thiers did not seek discretionary review in our Supreme Court.

In December 2018, Thiers filed the instant, timely PCRA petition. The PCRA court held a hearing in March 2019 at which both Thiers and his trial counsel testified. Thiers contended that his trial counsel was ineffective for advising him to reject the Commonwealth's offer of 15 to 30 years of imprisonment and instead representing to him that the court would likely impose a sentence of 40 to 70 months' incarceration. Thiers also maintained that his counsel never informed him of the maximum sentence he could receive for the crimes charged or about his right to withdraw his guilty plea. Further, he asserted that his trial counsel failed to give him a copy of an expert's report until after he was sentenced. Thiers argued that he thus never had the opportunity to correct factual discrepancies in the report.

However, during cross-examination, Thiers admitted that in both his oral and written plea colloquies he stated that his trial counsel had told him about the potential statutory maximum sentence he faced. Thiers further acknowledged that in his written colloquy, he stated he was aware he had 10

days from the date he was sentenced to withdraw his guilty plea. He claimed he made these acknowledgments simply to go along with counsel's plan.

Conversely, Thiers' trial counsel testified that after receiving Thiers' permission, he met with the prosecution and was able to negotiate their agreement not to seek the mandatory minimum sentences. Counsel then explained that he presented Thiers with the Commonwealth's proposed plea deal but did not advise him to either accept or reject the deal. Further, counsel stated that he did not tell Thiers that he could obtain a sentence of 40 to 70 months for him. Rather, according to counsel, he relayed to Thiers that if he entered an open plea, he could not control the amount of prison time the trial court might impose. Counsel also said that he informed Thiers about the maximum aggregate sentence he could receive and about his post-sentence rights, including the right to withdraw his guilty plea. Finally, trial counsel asserted that he had reviewed the contested expert's report with Thiers before submitting it to the court. Following the hearing, the court denied the petition.

On appeal, Thiers presents the following issues for our review:

1. Whether Attorney Sean Cullen provided ineffective assistance of counsel by advising [Thiers] to reject the offer by the Commonwealth of 15 to 30 years based on Attorney Sean Cullen's suggestion that an open plea to the charges would likely result in a total sentence of 40 to 60 months? More specifically, at the PCRA hearing, Attorney Sean Cullen did not articulate a legally sufficient basis or strategy for his failure to appropriately advise [Thiers]. Therefore, [Thiers'] plea was not knowing, intelligent or voluntary.

2. Whether Attorney Sean Cullen provided ineffective assistance of counsel by failing to advise [Thiers] that the maximum possible sentence that [Thiers] could receive was 40 to 80

- 3 -

years? More specifically, counsel also failed to advise [Thiers] of his right to withdraw his guilty plea within ten days of having pled guilty and failed to instruct [Thiers] of his right to withdraw his guilty plea within ten days of being sentenced. At the PCRA hearing, Attorney Sean Cullen did not articulate a legally sufficient basis or recognizable strategy for his failure to do so. Therefore, [Thiers'] plea was not knowing, intelligent or voluntary.

3. Whether Attorney Sean Cullen provided ineffective assistance of counsel by failing to obtain and review the report of [Thiers'] expert prior to it being submitted to the [c]ourt for sentencing which contained significant factual errors? More specifically, [Thiers'] attorney never presented it to [Thiers] prior to submitting it to the [c]ourt. At the PCRA hearing, Attorney Sean Cullen did not articulate a legally sufficient basis or strategy for his failure to do so.

Thiers' Br. at 7-8.

Our standard of review of an order denying PCRA relief is limited to determining "whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error." *Commonwealth v. Hart*, 199 A.3d 475, 481 (Pa.Super. 2018) (citation omitted). We are bound by any credibility determinations made by the PCRA court that are supported by the record but apply a *de novo* standard of review to the PCRA court's legal conclusions. *Commonwealth v. Medina*, 92 A.3d 1210, 1214-15 (Pa.Super. 2014) (*en banc*).

Thiers challenges the effectiveness of trial counsel. We presume counsel was effective. *Commonwealth v. Lesko*, 15 A.3d 345, 380 (Pa. 2011). Therefore, Thiers bore the burden of pleading and proving all of the following:

(1) the underlying claim has arguable merit;

(2) no reasonable basis existed for counsel's actions or failure to act; and

(3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Id.* at 373.

The PCRA court denied all of Thiers' ineffectiveness claims, and we affirm based on the Pa.R.A.P 1925(a) opinion of the Honorable Thomas P. Rodgers. In his first claim, Thiers contends that his trial counsel was ineffective for advising him to reject the Commonwealth's plea offer and instead asserting that his open guilty plea would likely result in the sentencing court imposing a sentence of 40 to 70 months' incarceration. Similarly, in his second claim, Thiers maintains that his trial counsel was ineffective for failing to inform him of his possible maximum sentence and about his right to withdraw his guilty plea. The PCRA court specifically determined that trial counsel's testimony regarding Thiers' first two issues was credible. In short, the court concluded that counsel had properly informed Thiers about the Commonwealth's offer, his potential sentence, and his right to withdraw his guilty plea. Thus, the PCRA court found that Thiers' counsel was not ineffective. *See* PCRA Ct. Op., 7/13/20, at 19-20.

In his third claim, Thiers argues that his counsel was ineffective for failing to review an expert's report with him prior to submitting it to the court. He argues that the report contained incorrect dates as well as inaccurate statements regarding his temperament. However, Thiers never explains how

these alleged inaccuracies prejudiced him and the PCRA court explains that none of the alleged errors factored into the court's fashioning of Thiers' sentence. Moreover, counsel asserted that he had reviewed the expert report with Thiers and the court found counsel's testimony to be credible. Thus, once again, the PCRA court concluded that Thiers did not prove that his trial counsel was ineffective. *Id.* at 20-21.

After a review of the parties' briefs, the certified record, and the relevant law, we find no abuse of discretion or error in the PCRA court's denial of relief. We thus affirm the rejection of Thiers' PCRA petition on the basis of Judge Rodgers' opinion.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/2/2021*

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA

v.

JOSEPH OESTERLE THIERS

: SUPERIOR COURT
: NO. 2137 EDA 2019
:
: TRIAL COURT
: NO. 8292-2013

**ROGERS, J.**                           **JULY 13, 2020**

## *OPINION*

### I.  INTRODUCTION

Joseph Oesterle Thiers ("Appellant") has appealed to the Superior Court of Pennsylvania ("Superior Court") from this court's June 24, 2019 order dismissing Appellant's petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546 following an evidentiary hearing on March 22, 2019.  Appellant's appeal is without merit for the reasons set forth below.

### II.  FACTS AND PROCEDURAL HISTORY

The relevant facts and procedural history underlying this appeal are as follows.[1]  On Saturday, October 19, 2013, Appellant drove to Double Visions,



---

[1]  Except where noted, the facts and history are taken from this court's opinion on direct appeal docketed on September 21, 2016, incorporated herein, and the memorandum opinion

an establishment located in Horsham Township, where he shot two employees, seriously wounding brothers Phil Catagnus and Jason Catagnus before leaving in his pickup truck. Police Officers Jose Ortiz and Emmanuel Reguera pursued Appellant, who failed to heed the officers' emergency lights and sirens, leading the officers on a high speed chase until eventually stopping in a driveway of a home on Warwick Road in Warrington Township, Bucks County. After getting out of his truck, Appellant took up a position from behind a tree and fired a Smith & Wesson six shot .22-caliber revolver at the two uniformed patrol officers, emptying the weapon. Fortunately, the two officers were able to take Appellant into custody without firing their own weapons.

During the week leading up to Appellant's jury trial, scheduled to begin on January 12, 2015, Appellant requested a non-trial disposition. Represented by Sean E. Cullen, Esquire, on January 9, 2015, Appellant entered into an open guilty plea to four counts of aggravated assault for causing the serious bodily injury of two victims and attempting to cause serious bodily injury to the two police officers based upon an agreement with the Commonwealth not to seek the mandatory minimum sentence of twenty (20) to forty (40) years for shooting at a police officer or the mandatory minimum sentence for use of a deadly weapon. Appellant had rejected the Commonwealth's aggregate offer of a fifteen (15) to thirty (30) year sentence

of the Superior Court filed on November 29, 2017. *Commonwealth v. Thiers*, No. 3465 EDA 2015 (Pa.Super. Nov. 29, 2017) (unpublished memorandum).

2

on the four counts. (Notes of Testimony ("N.T.") Guilty Plea Hearing 1/9/15, at 4).

Based upon the written colloquy and the answers Appellant provided while under oath to questions from Attorney Cullen, the Commonwealth and this court at the guilty plea hearing, the court accepted the terms of the plea agreement. The court also directed that a PPI evaluation and a presentence investigation be undertaken with the reports to be provided to the court and counsel. The undersigned deferred sentencing pending completion of those reports. (*Id.* At 20). In addition, Appellant met with Dr. Steven Samuel twice so that Dr. Samuel could prepare an expert report on his behalf. (N.T. PCRA Hearing 3/22/19, at 44-45). Appellant did not seek to withdraw his guilty plea before sentencing.

At sentencing on June 22, 2015, Appellant exercised his right to allocution. In addition, Attorney Cullen presented witness testimony and strenuously argued on behalf of his client. The undersigned read portions of the official Montgomery County records pertaining to Appellant, including statements of various witnesses and Appellant himself, as well as the report of Dr. Samuel, who the court noted is very well-respected. (N.T. Sentencing 6/22/15, at 51-63). In particular, the court indicated its reliance on Dr. Samuel's opinion that Appellant's traumatic brain injury and neurocognitive symptoms would have resolved before this violent incident, Dr. Samuel's opinion that Appellant was sensitive to criticism and strongly reactive when

3

perceived to be humiliated in front of others, and the Violence Risk Appraisal Guide indication of a clarification of a Risk Category 3 and what that means. (*Id.* at 59-61).

The court sentenced Appellant on Count 18 to six (6) to twelve (12) years' incarceration for the shooting of Jason Catagnus; on Count 19, six to twelve years' incarceration for the shooting of Philip Catagnus, imposed consecutive to Count 18, on Count 20, five (5) to ten (10) years' incarceration for the shooting at Officer Ortiz, imposed consecutive to Count 19, and on Count 21, five to ten years' incarceration for the shooting at Officer Reguera, imposed consecutive to Count 20. Based on Appellant's prior record score and the offense gravity score, all of the sentences fell within the standard range. The court imposed an aggregate sentence of twenty-two (22) to forty-four (44) years' imprisonment. Pursuant to the plea agreement, the court *nol prossed* the remaining counts on the bill of information, including, *inter alia,* multiple counts of criminal attempt to commit homicide and simple assault.

On June 30, 2015, Appellant filed timely post-sentence motions. Therein, Appellant argued that the aggregate sentence of twenty-two (22) to forty-four (44) years amounted to a life sentence in light of Appellant's then current age of 54, health and mental illness. The court heard argument on Appellant's post-sentence motions and request to modify sentence on Thursday, August 20, 2015. Attorney Cullen argued on Appellant's behalf regarding Appellant's history of mental illness and the brain injury Appellant

had sustained in California before returning to Pennsylvania. (N.T. Hearing on Defendant's Petition for Post-Sentence Motion and Request to Modify Sentence 8/20/15, at 3-5).

On October 21, 2015, the court issued an order denying Appellant's post-sentence motions. Appellant did not file a motion to withdraw his guilty plea. Instead, Appellant engaged current counsel, who filed a timely notice of appeal on November 16, 2015. On September 21, 2016, this court issued its opinion, and the Superior Court affirmed the judgment of sentence in a memorandum opinion filed on November 29, 2017. Appellant did not seek discretionary review.

On December 31, 2018, Appellant filed his first petition under the PCRA. Therein, Appellant alleged for the first time that he had rejected the Commonwealth's offer of fifteen (15) to thirty (30) years because Attorney Cullen had explicitly advised him that he could get Appellant a maximum sentence of forty (40) to seventy (70) months and that Appellant would be placed in a facility in Montgomery County. Additionally, according to Appellant, Attorney Cullen did not provide effective assistance of counsel because he failed to advise Appellant of Appellant's right to withdraw his guilty plea within ten (10) days of sentencing and by failing to review and correct Appellant's expert, Dr. Samuel's report before submitting it to the court. (Petition for Relief Under the Post-Conviction Relief Act filed 12/31/18).

The undersigned presided over a hearing on the petition on March 22, 2019. Appellant presented the testimony of his sister Karen Luft and brother Stephen Thiers before testifying himself. Notably, neither Mrs. Luft nor Mr. Thiers was ever present when Attorney Cullen met with or advised Appellant. (N.T. PCRA Hearing at 14, 23). Appellant testified that, *inter alia,* Attorney Cullen advised him to reject the Commonwealth's offer of fifteen (15) to thirty (30) years, Attorney Cullen never advised him of the statutory maximum that a judge could sentence him to and that he was not aware that he could have received forty (40) to eighty (80) years until after he had been sentenced. (*Id.* at 41). Moreover, Appellant claimed Attorney Cullen had told Appellant that he could get Appellant a forty (40) to seventy (70) month maximum sentence for the four (4) aggravated assaults. (*Id.* at 38, 40-42, 49, 76). Appellant's PCRA Counsel asked Appellant whether Attorney Cullen had ever informed him that Appellant had the right to withdraw his plea within ten (10) days of entering the plea, to which Appellant responded no. (*Id.* at 43). Appellant also claimed that he was never advised that he had ten (10) days to request to withdraw his plea after sentencing. (*Id.*). Appellant testified that Attorney Cullen never advised him in writing that he had ten (10) days from either of those proceedings to withdraw his plea. (*Id.* at 44). Appellant also asserted that Attorney Cullen did not give him a copy of Dr. Samuel's report until after sentencing, so Appellant could not have corrected the factual discrepancies in the report before sentencing. (*Id.* at

6

45). Appellant noted some incorrect dates, denied telling Dr. Samuel that he had a short fuse and he did not recollect telling Dr. Samuel "anything about overactiveness, distress, impulsivity and irritability." (*Id.* at 46-47). Appellant also took issue with some of Dr. Samuel's opinions, including the opinion that the history of physical abuse Appellant experienced as a child made it difficult for him to control his moods. (*Id.* at 68). Appellant insisted had he known he could have received a higher sentence than what the Commonwealth offered by pleading open, he would have "taken a good portion of it to trial." (*Id.* at 49).

On cross examination, Counsel for the Commonwealth walked Appellant through both his oral and written guilty plea colloquies wherein he acknowledged Attorney Cullen had gone through the guidelines with him, as well as the statutory maximum sentences and the possibility of consecutive sentences. (*Id.* at 52-54). Additionally, Appellant read the section from his written colloquy where he had acknowledged that he had ten (10) days from sentencing within which to file a motion to withdraw his guilty plea. (*Id.* at 61-62). Appellant claimed that his acknowledgement of his rights at the guilty plea hearing and at sentencing was merely him "going along with the plan" and that he had probably committed perjury. (*Id.* at 70, 76). This court found Appellant's testimony less than credible at times and completely incredible at other times.

The Commonwealth called Attorney Cullen on direct. Attorney Cullen testified that he entered the case quite early, meeting with Appellant and Appellant's family in addition to county detectives and the District Attorney's Office to gather facts and develop a strategy to proceed to trial.[2] (*Id.* at 80-81). He provided insight into his strategy, explaining that it was important to keep the case out of the media as much as possible while gathering all of the available evidence to prepare for trial. (Id. at 82-84). Attorney Cullen testified about viewing the videotape of the incident several times and realizing what the District Attorney's office thought were white flashes from Appellant's gun were actually a reflection off of the truck's rearview mirror because there were many more flashes than the three (3) to four (4) available shots left in Appellant's gun. (*Id.* at 85). The Commonwealth eventually produced a still shot depicting a bullet projectile bouncing off of the driveway directly in front of the police officers. (*Id.*). Attorney Cullen testified that after obtaining permission to discuss a possible plea deal from Appellant, he met with then District Attorney Risa Ferman and convinced her to take the mandatory minimum sentences off the table. (*Id.* at 87-88).

---

[2] Attorney Cullen has been practicing law for more than twenty-two (22) years, starting as a prosecutor in the Montgomery County District Attorney's Office and then as a private attorney. (N.T. PCRA Hearing 3/22/19, at 79-80). At all relevant times, Attorney Cullen's practice consisted of approximately seventy percent (70%) criminal defense work and he had tried approximately three (3) to four (4) aggravated assault cases to verdict. (*Id.* at 80, 103). He has also negotiated thousands of plea deals over the course of his legal career. (*Id.* at 89-90).

8

Eventually, Attorney Cullen obtained an offer of fifteen (15) to thirty (30) years and presented it to his client. (*Id.* at 88). Attorney Cullen testified that fifteen (15) years was basically a life sentence according to Appellant and his family because of Appellant's age and his physical and mental condition. (*Id.*). Attorney Cullen did not advise Appellant to reject the Commonwealth's offer. (*Id.* at 89). Rather, Attorney Cullen explained,

> I don't sell deals. I never tell a client ever to take a deal. I merely lay out the different scenarios, and I'm very careful in my explanation to say if one sounds better than the other, that is my analysis of the situation, but you're always the boss. And I always leave it up to the client to make that decision.

(*Id.*).

He also testified as follows:

> The take is to present every conceivable option that I can lay out for the client that could occur for them, so – and then to work with them, answer their questions, so that they see which is the best road that they wish to handle, and then readvise them on that. Okay, you've decided to go this path. However, there are still these pitfalls, these advantages.

(*Id.* at 90).

Attorney Cullen testified that he did not tell Appellant or Appellant's family that he could get Appellant an aggregate sentence of forty (40) to seventy (70) months. (*Id.* at 90-91). Furthermore, Attorney Cullen did not tell Appellant or Appellant's family that he could get Appellant into a specific kind of prison or a prison located in Montgomery County. (*Id.* at 91). Counsel explained that he knew going into an open plea, he would not be able to control either the amount of time the court would impose and neither

9

Counsel nor the court could control which facility the Department of Corrections would place a defendant once sentenced. (*Id.* at 91-93).

Attorney Cullen testified that he informed Appellant of the maximum possible aggregate sentence for the four charges as well as his post-plea and post-sentencing rights, including the right to withdraw his plea. (*Id.* at 93-94). Attorney Cullen explained that once the court had set a date for sentencing, he sent Dr. Samuel's April 21, 2015 report to the undersigned, Assistant District Attorney Jesse King and Appellant at the correctional facility. (*Id.* at 95; June 8 letter to Judge Rogers, copy to Jesse S. King ADA and Joseph Thiers, enclosing Dr. Samuel's report, Commonwealth Exhibit C-4). Attorney Cullen reviewed the report with Appellant before sentencing and testified that Appellant did not like the format and noted an incorrect date or two but did not feel a need to change anything. (*Id.*). Counsel testified that the report was not as strong as Appellant and the family would have liked, and Attorney Cullen made the strategic decision not to call Dr. Samuel as a witness and relied simply on the report itself. (*Id.* at 96). He explained that the unbiased report by a well-respected professional offered a stronger statement regarding Appellant's history of mental health issues, cancer and brain damage than Appellant's and his family's testimony alone. (*Id.* at 97). Attorney Cullen adamantly testified that he made no promises to Appellant or Appellant's family about the sentence or where it could be served. (*Id.*). Although Attorney Cullen explained his pre-sentence and post-sentence

10

rights to Appellant, Appellant never told Attorney Cullen that he wanted to withdraw his guilty plea. (*Id.* at 98-99).

Attorney Cullen testified that after sentencing, Appellant's family had approached him with a claim that the undersigned had done business with the Catagnus family as business partners and indeed was friends with the family. (*Id.* at 100, 127). Counsel included a general claim in Appellant's post-sentence motion that the family had new information that may have to be litigated before the court. As Appellant's family did not produce any evidence in support of their assertion, Attorney Cullen did not pursue the claim.[3] (*Id.*, 127-29).

On cross examination, Attorney Cullen testified that, according to facility records, he had met with Appellant at the Montgomery County Correctional Facility approximately fourteen (14) or fifteen (15) times. (*Id.* at 105). Attorney Cullen explained that after discussions with his client, Appellant decided pleading open was his best opportunity because of his age, his health and his mental condition. (*Id.* at 120-21, 123). Appellant already considered the Commonwealth's 15 to 30 years' offer a life sentence. (*Id.* at 120, 123). Attorney Cullen advised Appellant that he may get a lesser sentence or he may get a higher sentence even with Appellant's mitigation strategy. (*Id.* at 121, 123). After Attorney Cullen explained all of the

---

[3] The court confirmed on the record that there has been no business arrangement, partnership or friendship between the undersigned and either of the Catagnus brothers and those allegations were factually incorrect. (N.T. PCRA Hearing at 137-38).

possible sentencing scenarios, it was Appellant's decision to enter an open plea. (*Id.* at 123). PCRA Counsel also questioned Attorney Cullen about an email he wrote in response to one from Karen Luft after the court had sentenced Appellant. (*Id.* at 113-16; June 26, 2015 Emails, Petitioner's Exhibit D-1). There is no mention of a sentence of 40 to 70 months in either email. (*Id.*). This court found Attorney Cullen's testimony entirely credible.

On June 24, 2019, this court issued its order denying Appellant's PCRA petition for relief. Appellant filed a notice of appeal on July 23, 2019. The court directed Appellant to file a Concise Statement of the errors complained of on Appeal pursuant to Pa.R.A.P. 1925(b) ("Statement") by order entered on July 24, 2019. Appellant filed his Statement on August 14, 2019.

## III. ISSUES

Appellant raises the following issues in this appeal:

The [PCRA] court erred and/or abused its discretion at the PCRA hearing by denying Petitioner relief on the following grounds:

1. Attorney Sean Cullen provided ineffective assistance of counsel by advising Petitioner to reject the offer by the Commonwealth of 15 to 30 years based on Attorney Sean Cullen's suggestion that an open plea to the charges would likely result in a total sentence of 40 to 70 *months*. At the PCRA hearing Attorney Sean Cullen did not articulate a legally sufficient basis or strategy for his failure to appropriately advise Petitioner. Therefore, Petitioner's plea was not knowing, intelligent or voluntary.

12

2. Attorney Sean Cullen provided ineffective assistance of counsel by failing to advise Petitioner that the maximum possible aggregate sentence that Petitioner could receive was 40 to 80 years. Counsel also failed to advise Petitioner of his right to withdraw his guilty plea within ten days of having pled guilty and failed to instruct Petitioner of his right to withdraw his guilty plea within ten days of being sentenced. At the PCRA hearing, Attorney Sean Cullen did not articulate a legally sufficient basis or cognizable strategy for his failure to do so. Therefore, Petitioner's plea was not knowing, intelligent or voluntary.

3. Attorney Sean Cullen provided ineffective assistance of counsel by failing to obtain and review the report of Petitioner's expert prior to it being submitted to the Court for sentencing which contained significant factual errors. Petitioner's attorney never presented it to Petitioner prior to submitting it to the Court. At the PCRA hearing, Attorney Sean Cullen did not articulate a legally sufficient basis or strategy for his failure to do so.

(Appellant's Statement, filed August 14, 2019).

## IV. DISCUSSION

Preliminarily, this court notes that Appellant is not seeking to withdraw his guilty plea. Rather, Appellant seeks a new sentencing hearing.[4] Appellant contends that his guilty plea counsel provided ineffective assistance of counsel by advising him not to take the offer of fifteen (15) to thirty (30) years from the Commonwealth because Attorney Cullen purportedly told Appellant that Attorney Cullen could get him forty (40) to seventy (70) **months** on four counts of aggravated assault, two of which were against Montgomery County Police Officers. Moreover, according

---

[4] Appellant has not explained what he would seek at a new sentencing hearing.

to Appellant, Attorney Cullen provided ineffective assistance of counsel by failing to inform Appellant of the maximum exposure Appellant faced on the aggravated assault charges. The record belies these claims.

In *Commonwealth v. Baumhammers*, the Pennsylvania Supreme Court reiterated the applicable, well-settled law as follows:

> To be eligible for relief, a PCRA petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances enumerated in Section 9543(a)(2) of the PCRA, and that the allegation of error has not been previously litigated or waived. *See, e.g., Commonwealth v. Sneed*, 616 Pa. 1, 16-17 & n.13, 45 A.3d 1096, 1105 & n.13 (2012). For present purposes, the circumstances that would warrant relief are a constitutional violation, or ineffective assistance of counsel, which so undermined the reliability of the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

625 Pa. 354, 364, 92 A.3d 708, 714 (2014).

> The appellate court's longstanding standard of review provides:

> When reviewing an order granting PCRA relief, we must "determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error." *[Commonwealth v. Melendez–Negron*, 123 A.3d 1087, 1090 (Pa.Super.2015)] (citation omitted). Moreover, we will not disturb the findings of the PCRA court unless those findings have no support in the certified record. *Id.* (citation omitted).

*Commonwealth v. Rivera*, 154 A.3d 370, 377 (Pa.Super. 2017) (*en banc*), *appeal denied*, 642 Pa. 121, 169 A.3d 1072 (2017).

The scope of review is limited to the PCRA court's findings and the evidence of record, viewed in the light most favorable to the prevailing party in the PCRA court proceeding. *Commonwealth v. Busanet*, 618 Pa. 1, 17, 54

14

A.3d 35, 45 (2012) (citation omitted). These findings are viewed with "great deference" and will not be disturbed "merely because the record could support a contrary holding." *Commonwealth v. Touw*, 781 A.2d 1250, 1252 (Pa.Super. 2001) (citation omitted).

Pennsylvania appellate courts also recognize that the PCRA court hears the witnesses' responses, observes their demeanor and is in the best position to determine whether their testimony is credible. *Baumhammers, supra* at 369, 92 A.3d at 717 (citing *Commonwealth v. Weiss*, 565 Pa. 504, 518, 776 A.2d 958, 966 (2001)). The PCRA court's credibility determinations, when supported by the record, are binding on the appellate court. *Commonwealth v. Small*, 647 Pa. 423, 440–41, 189 A.3d 961, 971 (2018) (citing *Commonwealth v. Burton*, 638 Pa. 687, 701, 158 A.3d 618, 627 n.13 (2017)).

On review of a claim of ineffective assistance of counsel, the Pennsylvania appellate courts have repeatedly stated:

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [the petitioner] must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e. there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.
>
> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or

15

unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Timchak*, 69 A.3d 765, 769 (Pa.Super. 2013). *Accord Commonwealth v. Robinson*, 185 A.3d 1055, 1063 (Pa.Super. 2018) (*en banc*), *appeal denied*, 192 A.3d 1105 (Pa. 2018) (citing *Hickman*, 799 A.2d at 141). "Any deficiency in plea counsel's representation ... must necessarily have existed (if it existed at all) at the time of the plea." *Robinson, supra.* An appellate court will conclude that counsel's chosen strategy lacked a reasonable basis only if the appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Chmiel*, 612 Pa. 333, 361–62, 30 A.3d 1111, 1127 (2011) (citing *Commonwealth v. Williams*, 587 Pa. 304, 311, 899 A.2d 1060, 1064 (2006)).

An appellate court considers all of the circumstances surrounding the guilty plea to determine whether the defendant voluntarily entered that plea. *Commonwealth v. Kpou*, 153 A.3d 1020, 1023-24 (Pa.Super. 2016) (citing *Commonwealth v. Muhammad*, 794 A.2d 378, [383-384] (Pa.Super. 2002)). Since the law presumes that a defendant who entered a guilty plea was aware of what he or she was doing, the defendant bears the burden of proving that he or she did not knowingly, intelligently, and voluntarily enter the plea. *Commonwealth v. Reid*, 117 A.3d 777, 783 (Pa.Super. 2015) (citing *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa.Super. 2003));

16

*Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa.Super. 2008) (citation omitted).

A defendant is bound by the statements he or she makes during a guilty plea colloquy and may not later assert grounds for challenging the plea that contradict those statements. *Timchak, supra* at 774 (citation omitted); *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa.Super. 2012) (citation omitted).

> [A] defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa.Super. 2011) (citing *Pollard, supra* at 524).

Finally, the law does not require that a defendant be pleased with the outcome of his decision to enter a guilty plea, only that the decision to plead guilty be knowingly, voluntarily, and intelligently made. *Reid, supra* at 783 (citation omitted); *Timchak, supra* at 770 (citation omitted); *Bedell, supra* at 1212 (citation omitted).

In support of its decision on direct appeal, this court explained as follows:

> Moreover, a review of the record reveals that both counsel and the court conducted a thorough and comprehensive colloquy in which Appellant fully participated. Appellant acknowledged that his attorney had explained to him the elements of the offenses. Both Mr. Cullen and the assistant district attorney laid out the factual basis for the plea. Appellant acknowledged that he

17

understood that he had the right to a jury trial and both Mr. Cullen and the court went over his trial rights. Mr. Cullen explained the presumption of innocence and that the Commonwealth bore the burden of establishing Appellant's guilt beyond a reasonable doubt. Both attorneys explained the permissible range of sentences for aggravated assault as well as the potential for concurrent or consecutive sentences. Appellant acknowledged his understanding of the range of sentences. Appellant also acknowledged twice that he desired to plead guilty of his own free will, that no promises had been made other than what had been stated on the record and that he had not been forced, threatened or coerced into entering a plea. Additionally, he twice expressed satisfaction with the advice and representation of his attorney.

Further, Appellant executed a written guilty plea colloquy in which he also acknowledged all of these rights. Appellant also admitted in that colloquy that his attorney had explained to him all of the things that a person must have done to be guilty of the crimes to which he was pleading guilty and that in fact he had done all of the things a person must have done to be guilty of those crimes. He is bound by these statements. Moreover, the written colloquy outlined Appellant's trial rights, the presumption of innocence and the Commonwealth's burden. Finally, in the written colloquy, Appellant acknowledged that he understood his various rights, it was his decision and his alone to enter a plea, that he had had sufficient time to speak with his attorney before deciding to plead guilty and that he was satisfied with his attorney's representation. The record demonstrates that Appellant fully understood what the plea connoted and its consequences.

*     *     *     *

Instantly, as the record reveals, both counsel and the court asked Appellant numerous times whether he understood his rights and he responded that he did. Both counsel and the court asked Appellant whether he had any questions during the proceeding and he responded that he did not. When asked at the close of his thorough plea colloquy whether he wanted the court to accept his plea, Appellant responded that he did. Appellant exercised his right to allocution at sentencing. While doing so, Appellant again admitted his guilt, and he did not request to withdraw his plea.

18

*Commonwealth v. Thiers*, Montgomery County Docket No. 8292-2013, filed Sept. 21, 2016, at 20-23.[5] He is bound by these statements.

Moreover, Appellant could have sought to withdraw his plea but has never requested to do so even though he claimed he would have taken a good portion of the case to trial had he known that he could be sentenced to more than the Commonwealth's offer. This court listened intently to the testimony of the witnesses and to the argument of counsel at the PCRA hearing. The court observed the demeanor of the witnesses and made credibility determinations. In short, Attorney Cullen provided credible testimony regarding his general practice as well as his specific recollections about this particular case.[6]

Appellant and his Counsel make light of the fact that Attorney Cullen was able to arrange a meeting with the District Attorney and actually convince her to take the mandatory minimum sentences off the table. Apparently, they are unaware of how seriously the Montgomery County District Attorney's Office takes shooting at two of their police officers. This

---

[5] *See Commonwealth v. Strausser*, 1052 EDA 2012, 2013 WL 11299433, at *6 (Pa.Super. Jan. 28, 2013) (unpublished memorandum) (holding appellant failed to demonstrate the arguable merit prong of his IAC claim because the PCRA court found that his testimony underlying the claim lacked credibility, particularly in light of the plea colloquy and trial counsel's testimony to the contrary).

[6] As Attorney Cullen testified, he has been practicing before the Montgomery Country bar for many years, and many times before this court. The undersigned has found Attorney Cullen to always be well prepared and meticulous in his oral and written guilty plea colloquies, as evidenced by his notes on the written colloquy and during the oral colloquy in this matter. (N.T. PCRA Hearing, Guilty Plea, Commonwealth Exhibit C-2).

19

court opines that Attorney Cullen's experience, reputation and hard work resulted in the offer from the Commonwealth. That Appellant chose to reject that offer is also one of Appellant's rights. That Appellant and his family are now unhappy with the result does not warrant the relief they seek. Appellant has not met his burden of demonstrating that his underlying claim is of arguable merit. Appellant has failed to demonstrate that Attorney Cullen did not provide effective assistance of counsel. Accordingly, Appellant's first two claims are unavailing.

In his final issue on appeal, Appellant asserts that Attorney Cullen provided ineffective assistance of counsel by failing to present the report of Appellant's expert which contained significant factual errors to Appellant for review prior to submitting it to the Court. Appellant has not offered an explanation as to how the outcome of the proceedings would have been different had the few corrections to the report been made. This claim also lacks merit.

Appellant's complaints concerning the report can be distilled into three categories. Appellant noted some incorrect dates, he denied telling Dr. Samuel that he had a short fuse, and he did not "recollect saying anything about overactiveness, distress, impulsivity and irritability" to Dr. Samuel.

When referencing the report and explaining the reasoning in support of the sentence, the court did not mention any of these dates or adjectives as a factor in the decision. Rather, the court noted that Dr. Samuel is a well-

20

respected professional, and explained the findings and opinions that did go into the court's reasoning in support of the sentence as fashioned. Appellant has not met his burden of demonstrating that his underlying claim is of arguable merit. Again, Appellant has failed to demonstrate that Attorney Cullen did not provide effective assistance of counsel. Accordingly, this court properly denied Appellant's PCRA petition seeking relief.

## V.  CONCLUSION

Based upon the foregoing analysis, this court respectfully requests that the Superior Court affirm this court's June 24, 2019 order.

**BY THE COURT:**

**THOMAS P. ROGERS, J.**
**Court Of Common Pleas**
**Montgomery County, Pennsylvania**
**38th Judicial District**

Copies sent on 07/13/20 to:
**By E-Mail:**
Robert M. Falin, Deputy District Attorney for the
    Commonwealth of Pennsylvania
Brandi L. McLaughlin, Esquire, Counsel for Appellant

Judicial Assistant

21