J-S44039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
         v.       :
  :
  :
ERVIN SPURIEL   :
  :
       Appellant   :   No. 825 EDA 2023

Appeal from the PCRA Order Entered March 3, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001983-2011

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:         **FILED SEPTEMBER 24, 2024**

Appellant, Ervin Spuriel, appeals from the order of the Court of Commons Pleas of Philadelphia County dismissing without a hearing his serial petition filed pursuant to the Post-Conviction Relief Act, 42 § 9541 *et seq*. ("PCRA). Of the four claims raised in Appellant's brief, one is time-barred and three are reviewable but meritless. We affirm the PCRA court.

On direct appeal, this Court adopted the facts of the case as summarized by the trial court, as follows:

> On July 10, 2010, at approximately 10:18 p.m., Jamal Parker was driving down 21st Street towards Mifflin Street in South Philadelphia. Mr. Parker saw a friend, Marquis Gilliard, walking down the street, and stopped his car briefly to talk to him. Mr. Parker then continued driving down the block and got out of the car. Mr. Parker approached a group of men that included defendant and co-defendant [Chaz] Henry, who had sold drugs for Mr. Parker, along with Andrew Fairey, Antione Smith, and

---

[*] Retired Senior Judge assigned to the Superior Court.

[co]defendant's brother Devon Henry. [Co-defendant Henry] called over to Mr. Parker and acted as though he was going to give Mr. Parker money. Co-defendant Henry then pulled a gun from his waist and began chasing Mr. Parker, shooting him. Defendant approached Mr. Parker and also shot him, after which Mr. Parker collapsed to the ground. Defendant continued to shoot Mr. Parker in the back after he fell. Defendant, co-defendant Henry, Mr. Henry, Mr. Fairey, and Mr. Smith all fled the scene.

Police arrived and transported Mr. Parker to the University of Pennsylvania Hospital, where he was pronounced dead at 10:28 p.m. He had been shot nine times, once each in the head, neck, arm, hip, buttock, thigh, and leg, and twice in the back. The police recovered 11 fired cartridge casings from the scene, eight of which had been fired from the same .40 caliber handgun and three of which had been fired from the same .45 caliber handgun. Two .40 caliber bullets were recovered from Mr. Parker's jaw and throat, and one .45 caliber bullet was recovered from his back. The weapons used in the shooting were not recovered.

Marquis Gilliard was questioned by homicide detectives. He identified defendant and co-defendant Henry, both of whom he knew personally, as the people who shot and killed Mr. Parker. Mr. Gilliard told police that the murder was over money, as both defendant and co-defendant Henry owed Mr. Parker money for drugs. Devon Henry was also questioned by the police and told police that he had witnessed the shooting. He also told police that defendant and co-defendant Henry had talked to him about the shooting after it happened, and that the murder was committed over drug money that they both owed to Mr. Parker. Detectives questioned David Marks, a friend of Mr. Parker, who told them that on the night of the shooting, defendant told him that he had killed Mr. Parker.

Police recovered two cell phones from the scene of the shooting, both of which belonged to Mr. Parker. From one of these phones, they recovered several confrontational text message exchanges between defendant and Mr. Parker, one of which, from defendant, that stated, "After this I'm done. One minute you act like my man then you act like you don't care. I'll give you your dough." Mr. Parker had also called defendant two times immediately prior to the shooting, once at 10:13 p.m. and once at 10:14 p.m. Defendant and co-defendant Henry were arrested.

Trial court opinion, 5/23/13 at 2–4 (citations to the record omitted). The Commonwealth also introduced the testimony of Officer Margaret McGrory concerning her investigation into appellant's sales of crack cocaine; the investigation was still open, and appellant had not been convicted of any crime. (Notes of testimony, 12/19/12 at 75–87.) She detailed six separate purchases orchestrated by a confidential informant, which occurred approximately four months prior to the murder.

**Commonwealth v. Spuriel**, 603 EDA 2013, 2014 WL 10575388, at *1–*2

(Pa. Super., filed Sept. 8, 2014) (footnotes omitted). In addition, we stated:

At trial, appellant denied any part in the victim's death. He argued the Commonwealth's witnesses were unreliable and averred that they accused him to deflect attention from themselves. Appellant testified that he bought crack in bulk, cooked it, and sold it for profit. (Notes of testimony, 12/20/12 at 141–142.) He denied that he bought crack from Parker and denied that he was in debt to Parker, with the exception of one point in time when he owed Parker $175 for a YMCA membership. (*Id.* at 142–146.) Appellant claimed that his text to Parker about "[a]ll the fucking bread" he made for him referred to marijuana business he sent to Parker. (*Id.* at 146.) Appellant denied shooting the victim and testified that he was at a cookout a block away from the murder and could not get any of the approximately 15 people who were with him to testify on his behalf. (*Id.* at 163–170.) The parties stipulated that appellant had two prior adjudications of delinquency for *crimen falsi* offenses. (*Id.* at 206.) The parties also stipulated that neither appellant nor co-defendant Henry was licensed to carry a firearm and that co-defendant Henry had been convicted for selling drugs.

**Id**. at *2.

Appellant and co-defendant Henry were jointly tried by a jury before the Honorable Glenn B. Bronson. Trial commenced on December 17, 2012. On December 21, 2012, the jury returned a verdict finding Appellant guilty of murder of the first degree, criminal conspiracy and violating the Uniform

Firearms Act.[1] On January 11, 2013, the trial court imposed the mandatory term of life imprisonment for murder of the first degree and a cumulative concurrent sentence of 21 to 42 years' imprisonment for criminal conspiracy and the firearms offense.[2]

Appellant filed a timely appeal, raising several evidentiary claims and multiple allegations of improper argument in closing and summation by the prosecutor. This Court affirmed the judgment of sentence. *Spuriel*, 2014 WL 10575388, at *1–*2. Appellant filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on February 24, 2015.

Appellant filed a counseled timely PCRA petition on April 14, 2016, alleging instances of trial counsel's ineffective assistance with respect to Rule 404(b) and alibi evidence admitted at trial, for failing to request curative instructions with respect to the prosecutor's summation, for failing to call Roger Tyrone Whitaker as an alibi witness and for failing to consult with him with respect to presenting character witnesses. A hearing was granted with respect to the missing alibi witness only. Between the grant and holding of the hearing three different PCRA counsel represented Appellant, and the PCRA court expanded the hearing to include two additional claims of ineffectiveness

---

[1] 18 Pa.C.S. §§ 2502, 903 and 6108, respectively.

[2] Co-defendant Henry was convicted of the same crimes and sentenced to a mandatory term of life imprisonment and a cumulative concurrent sentence of 21-45 years' imprisonment. A panel of this Court affirmed co-defendant's judgment of sentence on direct appeal. *See Commonwealth v. Henry*, 202 EDA 2013, 2014 WL 10919588 (Pa. Super., filed May 16, 2014) (unpublished memorandum).

of trial counsel for failing to request an alibi instruction and to present character evidence.

The hearing was held on June 15 and July 18, 2018, before Judge Bronson. At the hearing, Appellant testified that "surveillance video existed that proved that he was not present at the scene of the shooting" and contradicted other Commonwealth witnesses. *See Commonwealth v. Spuriel*, 1281 EDA 2019, 2020 WL 5797895, *3 (Pa. Super., Filed Sep. 29, 2020) (unpublished memorandum). Because Appellant had not previously raised such a claim, the PCRA court invited him to submit proof that such a video existed and provided an alibi. *Id*. In response, he filed a second amended petition alleging that trial counsel also was ineffective for failing to introduce a video tape corroborating his defense. The amendment did not proffer any evidence that the alleged video would provide Appellant with an alibi. *Id*. at *3-*4. The PCRA court denied relief.

Appellant appealed and raised two ineffective assistance claims that trial counsel had failed: to present video evidence refuting Commonwealth witnesses as to his direction of travel after the murder; and to present Roger Tyrone Whitaker as a witness at trial which would also have refuted Commonwealth witnesses with respect to the direction he ran after the murder. *Id*. at *4.[3] With respect to the video claim, this Court held that it was

_____

[3] Roger Tyrone Whitaker testified at the evidentiary hearing that he was inside his residence at 1905 S. 21st Street on the night of the shooting, and that he
*(Footnote Continued Next Page)*

- 5 -

waived because the amendment was without permission and the claim not properly raised before the court. We also found Appellant failed to demonstrate prejudice with respect to Whitaker's testimony, because two Commonwealth witnesses corroborated each other about the direction Appellant ran and also provided additional information, and the testimony and statement of David Marks alone, whose testimony would not have been contradicted by Whitaker, was sufficient. *Id*. *5. As we summarized:

> Accordingly, even without the testimony of Gilliard and Devon, the Commonwealth still presented testimony that Appellant admitted to the crimes, physical evidence that Appellant persuaded Parker to come to the location of the crime, and testimony and stipulation as to Appellant's role in the drug trade that in turn established motive, all of which, in combination with Appellant's questionable veracity, was sufficient for a jury to find Appellant guilty of all of the crimes of which he was convicted.

*Id.* at *6.

As a result, this Court affirmed the PCRA court's order dismissing Appellant's first PCRA petition. On March 30, 2021, the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal. ***Commonwealth v. Spuriel***, 251 A.3d 774 (Pa. 2021).

---

saw defendant across the street (which is less than one block away from the scene of the shooting) 10-15 seconds after he had heard the gunshots. N.T. 6/15/18, 11-14. Trial counsel testified that he did not want Whitaker to testify because, rather than providing an alibi, Whitaker inculpated defendant by placing him near the scene of the crime right after the shooting occurred. N.T. 7/18/18, 40-41. The PCRA court found that Whitaker's PCRA version of events contradicted Appellant's testimony at trial that he was at a cookout when the shooting occurred. PCRA Court Opinion, 12/4/19, 9.

On April 23, 2021, Appellant filed his second PCRA petition *pro se*, in which he asserted that there was exculpatory evidence unavailable at the time of trial that would have changed the result. Specifically, Appellant alleged that he met Christopher Rose in prison and Rose told him that he was willing to testify that Appellant was on 21st Street between Mifflin and Moore when the decedent was shot.[4] The Commonwealth filed a motion to dismiss. Judge Bronson, sitting as the PCRA court, issued on September 17, 2021, a Notice of Intent to Dismiss in accordance with Pa.R.Crim.P 907 stating that the issue raised was meritless. On October 12, 2021, Appellant filed a response to the PCRA court's notice, which, in pertinent part stated he had hired counsel on September 24, 2021, and requested the PCRA court to allow counsel to amend the petition. Response to 907 Notice, 10/12/21, 1; Trial Court Record, 471.

On March 9, 2022, PCRA counsel filed a motion to attach two additional affidavits to the pending PCRA petition, specifically affidavits from Benjamin Whittaker and from Devon Henry. Appellant's Motion, 3/9/22, 1; Trial Court

_____

[4] The "unsworn affidavit," dated Aug 12, 2019, attached to the petition states that Rose lived at 2027 Sigel Street in the summer of 2010. Shortly before decedent was shot Rose states he was in front of a house on 21st Street between Sigel and Mifflin Streets with friends. He states that he remembers "Erv pulling up and parking. He got out of his car and was screaming into his phone walking by us going towards the older guy's like two houses from where I was." He states that "[n]ext shots were going off." He found out shortly after that decedent was injured. PCRA Petition, filed April 23, 2021, Attachment; Trial Court Record, 448. We note that decedent was found in the street by 1943 21st Street, which is on the block between Mifflin and McKean. N.T. 12/18/12, 10-11. This location is about a block from where Rose said he saw Appellant. Notably, in the first PCRA, Roger Tyrone Whitaker placed Appellant on the other side of Mifflin Street closer to decedent. N.T. 6/15/18, 11-14.

Record, 481.[5] Mr. Whittaker claimed to have been "in the area" of "south 21st Street … at the time of the shooting" and did not see Appellant "in the area that night" and Mr. Henry stated he "did not see [Appellant] near the area of the shooting." Appellant's Motion, 3/9/22, Attachment A & B; Trial Court Record, 487, 489. Both affidavits asserted that the men gave statements to the police, Mr. Whittaker's never having been forwarded to the District Attorney's Office and Mr. Henry's having been coerced. *Id*.

On March 10, 2022, counsel filed an amended PCRA petition arguing that the after-discovered evidence claims based on the proffers for Rose, Whittaker and Henry were based on newly discovered facts previously unknown to Appellant and could not have been ascertained by due diligence, and were reviewable as an exception to the time bar pursuant to 42 Pa.C.S. § 9545(b)(1)(ii). Amended Petition, 3. Appellant further alleged that he learned on or about November 16, 2021, that Detective James Crone, who testified at trial, was identified by the District Attorney's Office "as an officer who may have engaged in misconduct that necessitated disclosure" for having written a "racial charged letter." Amended Petition, 4.[6] On November 10,

---

[5] The "Affidavit of Benjamin Whittaker" spells Whittaker with two Ts. Roger Tyrone Whitaker, who testified during the first PCRA proceeding, used one T in his last name. There is no indication in the record whether these two men were related.

[6] On July 21, 2022, counsel filed a Second Amended Petition, which provides context for the claims raised in the Amended Petition. *See* Second Amended Petition; Trial Court Record, 532-536.

2022, the Commonwealth filed a Response raising both timeliness and substantive grounds to dismiss the amended petition. Trial Court Record, 557-576. On February 3, 2023, the PCRA court issued a Notice of Intent to Dismiss the petition pursuant to Rule 907 stating that one claim was untimely and three were meritless. Rule 907 Notice, 1-2; Trial Court Record 585-586. Counsel filed a motion to withdraw. On March 3, 2023, the PCRA court dismissed the petition without a hearing and granted counsel's motion to withdraw. Dismissal Order, 3/3/23; Withdrawal Order, 3/3/23; Trial Court Record, 594 & 596.

Appellant filed a timely Notice of Appeal *pro se* on March 22, 2023. In that notice Appellant asserted five grounds for appeal. Four of the grounds were based on claims raised in the Second Amended Petition. The fifth ground was a new claim alleging PCRA counsel's ineffective assistance for failing to preserve a claim of trial counsel's ineffective assistance for failing to "introduce video footage of the crime scene [to] refute Commonwealth witness identification." Notice of Appeal, 3/22/2023, 1-2; Trial Court Record, 598-599. **See also Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2021) ("a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal"). This fifth claim is not included in Appellant's brief. It is therefore waived for review. **See Commonwealth v. Kneller**, 999 A.2d 608, 613 (2010).

Appellant filed a *pro se* brief in this Court. We note that Appellant's Brief does not adhere to the Rules of Appellate Procedure, but we endeavor to fairly address the legal claims as it appears Appellant has cited to the record and some pertinent legal authority in each argument section of his brief.[7]

Appellant raises the following four claims in his *pro se* brief:

1. Did the PCRA Court violate Appellant's right to due process regarding the after discovered evidence of Christopher Rose. For Appellant's failure to prove an exception to the PCRA's time-bar applicable. Further claiming the issue is without merit due to Mr. Rose proffered testimony contradicting appellant's trial testimony?

2. Did the PCRA Court violate Appellant's right to due process under **Brady** where the government interfered and suppressed/ destroyed the statement of Benjamin Whittaker who proffered testimony he was present at the date and time of the murder, and did not see six-foot-nine Appellant present or running through the scene, then detectives held him in custody for several days following this statement?

3. Did the PCRA Court violate Appellant's right to due process by denying relief under after-discovered-evidence when the Commonwealth witness Devon Henry proffered testimony he was held in custody for days and forced to sign a statement, despite Mr. Henry's testimony of never signing a statement or being in custody at trial. Mr. Henry's statement was introduced under **Brady**/**Lively** to the jury, also Mr. Henry's statement being provided to the jury during deliberations?

4. Did the PCRA Court violate appellant's right to due process when the Commonwealth suppressed pending charges on its witness Detective Crone for misconduct on a fellow officer of the court. And ruling the evidence would not be admissible at trial or only used to impeach the credibility of the witness once the Commonwealth disclosed this material to Appellant?

_____

[7] The Commonwealth filed a brief relying wholly on the PCRA court's opinion without any additional comments.

Appellant's Brief, 5, 9, 22, 38 (unpaginated) (cleaned up slightly)

We review an order denying a PCRA petition to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018); *Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa. Super. 2016). The PCRA court need not hold an evidentiary hearing if it "can determine from the record that no genuine issues of material fact exist." *Commonwealth v. McCready*, 295 A.3d 292, 298 (Pa. Super. 2023) (citation omitted). We review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011). "Moreover, it is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Pridgen*, 305 A.3d 97, 101 (Pa. Super. 2023), *appeal denied*, 2024 WL 2010557 (Pa., May 7, 2024).

The timeliness of a PCRA petition is a threshold jurisdictional matter that must be addressed. *Commonwealth v. Gandy*, 38 A.3d 899, 902 (Pa. Super. 2012). The timeliness restrictions of the PCRA "are jurisdictional in nature and are to be strictly construed." *Commonwealth v. Stokes*, 959 A.2d 306, 309 (Pa. 2008). Whether a petition is timely raises a question of law, *Commonwealth v. Fahy*, 959 A.2d 312, 316 (Pa. 2008), which we review *de novo*. *Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa. Super. 2013). An untimely petition renders this Court without jurisdiction to afford relief. *Taylor*, 65 A.3d at 468; *Gandy*, 38 A.3d at 903.

Since 1996, any petition for relief under the PCRA, including a second or subsequent petition, "shall be filed within one year of the date on which the judgment of sentence becomes final." 42 Pa.C.S. § 9545(b)(1).[8] Appellant's judgment of sentence became final on May 25, 2016, when the period for filing a Petition for Writ of Certiorari in the United States Supreme Court expired. Therefore, Appellant had until May 25, 2017, to file a timely petition. The instant, serial petition was filed on April 23, 2021. Therefore, Appellant had to demonstrate in the petition that it satisfied one of the three exceptions to the time bar and was raised within a year of when the claim could have been first presented. *Id*. at 9545(b)(1) & (b)(2). It was Appellant's obligation to plead and prove in the petition that an exception applied. ***Commonwealth v. Marshall***, 947 A.2d 714, 719 (Pa. 2008).

The only exception to the time bar asserted by Appellant or counsel in the pleadings before the PCRA court was for newly discovered facts: "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). "The focus of the exception is on the newly discovered *facts,* not on a newly discovered or newly willing source for previously known facts." ***Marshall***, 947 A.2d at 720 (internal quotation marks

---

[8] A "second or subsequent petition must present a strong *prima facie* showing that a miscarriage of justice may have occurred." ***Stokes***, 959 A.2d at 309. ***See also Commonwealth v. Marshall***, 947 A.2d 714, 719 (Pa. 2008).

and brackets omitted) (emphasis in original). "[A] petitioner must allege and prove (a) the existence of facts that were unknown to him and (b) his exercise of due diligence in discovering those facts." ***Commonwealth v. Brown***, 111 A.3d 171, 179 (2015). Moreover, the plain language of the exception makes it claim dependent, that is, Appellant must plead and prove its applicability for each claim reviewed.

The PCRA court ruled that Appellant's first claim, based on the proffered testimony of Christopher Rose was time barred, because he failed to demonstrate in the amended petition that the proffered statement could not have been obtained sooner with due diligence. PCRA Court Opinion, 9-10. The PCRA court writes:

> [Appellant] suggests that while he knew his entire neighborhood was outside on the night of the shooting, he could not find Rose for nearly a decade despite the fact that Rose also lived in the neighborhood. [Appellant], at no time, proffered evidence of any steps he took to secure witnesses from the neighborhood, such as Rose, in the seven years between his conviction and the date on Rose's affidavit. Accordingly, [Appellant] failed to set forth averments that could establish that he acted with due diligence in securing Rose's proffered testimony. Therefore, the newly-discovered facts exception to the time-bar does not apply, and his claim is untimely.

PCRA Court Opinion, 10. We agree with the PCRA court.

"Due diligence demands that the petitioner take reasonable steps to protect his own interests." ***Brown***, 111 A.3d at 176.  A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. ***Commonwealth v. Breakiron****,* 781 A.2d 94, 98 (2001). This rule

- 13 -

is strictly enforced. **Brown**, 111 A.3d at 176. Based on Appellant's trial testimony he knew from the day of the murder there were many people that knew him on the street where he claimed to have been – he complained during his trial testimony that none of them would testify, N.T. 12/20/12, 171-173 – and had proffered testimony from a different new witness during his first PCRA proceeding, a witness who in fact placed him in a different location.[9] Therefore, without explanation to why he could not discover this witness sooner, he failed to demonstrate the required due diligence. **Commonwealth v. Robinson**, 185 A.3d 1055, 1063-64 (Pa. Super. 2018) (*en banc*) (where the basis for a substantive claim was known prior to discovering evidence of it, a PCRA petitioner has "the duty to seek out the facts that would support any claim"). The failure to demonstrate due diligence renders the claim unreviewable. **Brown**, 111 A.3d at 179.

Appellant "averred" that he first learned of the allegedly suppressed statement of Benjamin Whittaker in November 2021. **See** Second Amended Petition, 3. Appellant's claim of a violation of **Brady v. Maryland**, 373 U.S. 83 (1963), based on the alleged Whittaker statement was first raised in the Amended Petition filed on March 10, 2022. **See** Amended Petition, 2; Trial Court Record, 493. As such, the PCRA court ruled that the claim was timely

---

[9] We do not rule on the PCRA court's alternative holding that the proffered testimony from Rose would not have altered the verdict. However, we note that the PCRA court recognized the contradictory nature of Appellant's proffers; the Rose proffer contradicts his own trial testimony, and the proffer of Roger Tyrone Whitaker during the first PCRA proceeding contradicts Appellant's trial testimony and the Rose proffer. **See** PCRA Court Opinion, 11.

raised within a year of when it could have first been raised. PCRA Court Opinion, 16. We agree. *See* 42 Pa.C.S. § 9545(b)(2) ("Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented").

Therefore, we address the merits of Appellant's *Brady* claim. The law governing such claim is well settled:

> In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-54 (Pa. 2005) (internal citations and quotations omitted). There are three necessary components for a meritorious claim that the Commonwealth violated Appellant's right to due process by failing to disclose *Brady* material: "the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Commonwealth v. Conforti*, 303 A.3d 715, 726 (Pa. 2023) (quoting *Lambert*, 884 A.2d at 854).

Appellant's proffer from Benjamin Whittaker stated that he knew Appellant "from the streets" and "On July 10, 2010 I was outside in the area

of South 21st Street and was in the area at the time of the shooting. I never

saw [Appellant] in the area that night and certainly never saw him with a gun."

Second Amended Petition, Attachment B; Trial Court Record, 543. As the PCRA

court stated:

> Benjamin Whit[t]aker does not clarify where in relation to the shooting he was that night. Additionally, he does not contend that he saw the shooting or that he saw someone other than defendant commit the murder. As such, Benjamin Whit[t]aker's proffered testimony, that he was somewhere in the general vicinity of the shooting and did not see the defendant that night, is not helpful to the defense.

PCRA Court Opinion, 17. We agree. Whittaker's proposed testimony is not

exculpatory. *Lambert*, 884 A.2d at 857 (evidence "is not exculpatory merely

because appellant so labels it"). Thus, the allegedly suppressed statement was

not favorable to the accused and therefore Appellant could not demonstrate

the first element of a *Brady* claim.[10]

_____

[10] We do not rule on whether Appellant demonstrated the remaining elements of a *Brady* claim. We would have to infer assertions not explicitly in Whittaker's affidavit to conclude that he provided a statement to police with this information in it, as he stated he was held for "days and questioned" following the shooting, and also asserted that the "police never gave my statement to the District Attorney's Office." Second Amended Petition, Attachment B; Trial Court Record, 543. He did not state that he provided or signed a statement. Nor could he have had first-hand knowledge of whether police officials gave the prosecutor's office his alleged statement. Even if the statement exists as alleged by Appellant, however, we doubt it was material, that is, there was a reasonable probability that had the statement been disclosed the result of Appellant's trial would have been different. *See Commonwealth v. Willis*, 46 A.3d 648, 656 (Pa. 2012) ("evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different") (internal quotation marks omitted). Given that Whittaker did not

*(Footnote Continued Next Page)*

With respect to Devin Henry's proffered recantation, Appellant stated that he learned of it on or about May 22, 2021, when Devon Henry told former PCRA counsel, and included an after-discovered evidence claim based on it in his Amended Petition filed on March 10, 2022. Amended Petition, 3. The PCRA court found the claim was timely raised under the newly discovered fact exception to the time bar. PCRA Court Opinion, 13. We agree and now address the merits of Appellant's claim.

An appellant seeking a new trial based on after-discovered evidence must demonstrate the following elements:

> (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

*Commonwealth v. Royal*, 312 A.3d 317, 322 (Pa. Super. 2024) (reargument denied). The evidence must be "producible and admissible." *Commonwealth v. Castro*, 93 A.3d 818, 825 (Pa. 2014) (citation omitted). "Whether new evidence is corroborative or cumulative in this context depends on the strength of the other evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 364 (Pa. Super. 2010). Further, "[t]he test is conjunctive; the appellant must show by a preponderance of the evidence that

---

see Appellant that night, even though Appellant testified he was in the area, and did not claim to have seen the shooters, it is unsurprising that he would not have been contacted "about giving testimony at trial." Second Amended Petition, Attachment B; Trial Court Record, 543.

each of these factors has been met in order for a new trial to be warranted." ***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012) (brackets omitted).

The proffer from Devon Henry states in pertinent part that he knew Appellant "from the streets" and that he had previously told Appellant's former attorney that "I was held for several days by the Police after the shooting and the police forced me to sign a statement that I did not agree with." Second Amended Petition, Attachment 2; Trial Court Record 545. The proffer also states that on "the night of the shooting, I did not see [Appellant] near the area of the shooting." ***Id***. Notably, Devon Henry did not state in the proffer whether he saw the shooting, unlike his statement to detectives admitted at trial.

Devon Henry, who is the brother of co-defendant Chaz Henry, testified at trial. Prior to trial he was held in custody as a material witness. N.T. 12/18/12, 135-136. He had provided detectives with a statement naming both Appellant and his brother as shooters. At trial he disavowed that statement. He claimed to not know any information of direct relevance, and to not recall having provided a statement to police detectives on August 4, 2010. ***Id***., 110. He denied that his signature appeared at the bottom of each page. ***Id***. When confronted with the statement, he either denied giving the answer written or claimed to not remember. ***Id***., 110-122. More specifically, he testified he did not recall telling detectives that he saw his brother and Appellant shooting and then running from the scene. ***Id***., 115-116. The substance of the written

statement was later admitted as a prior inconsistent statement through the testimony of Detective James Crone. N.T. 12/19/12, 11-22.

As the PCRA court recognizes, Devon Henry's "newly proffered testimony is nothing more than an alternative, and completely inconsistent, reason for him to disavow his statement to police. Thus, it would not likely compel a different verdict at a new trial." PCRA Court Opinion, 14. In essence, Devon Henry's proffer changes his trial testimony from a denial that he had given the written statement attributed to him, which inculpates both his brother and Appellant, to an assertion that he *did* make the written statement attributed to him but only under a vague form of police coercion. Even if his present claims were substituted for his trial testimony, the prior inconsistent statement identifying Appellant as one of the shooters would have been admitted as substantive evidence and with the statement of Marcus Gilliard and testimony of David Marks would still present a consistent narrative of the shooting and surrounding circumstances. *See Commonwealth v. Brown*, 52 A.3d 1139, 1171 (Pa. 2012) (properly admitted prior inconsistent statement where factfinder had opportunity to judge the credibility of the declarant subject to full cross-examination may furnish legally sufficient evidence to sustain an Appellant's convictions).

The Pennsylvania Supreme Court has held that a trial witness' full recantation of trial testimony would require an evidentiary hearing to determine whether the recantation was credible. *See Commonwealth v. D'Amato*, 856 A.2d 806, 825-826 (Pa. 2004). The witness in *D'Amato* had

testified at trial that the appellant on the night of the murder in question had borrowed the witness' gun. *Id*. at 825. His recantation could, if believed, alter the inculpatory evidence available at trial, but the lower court had not evaluated the "significance" of the recantation "in light of the trial record." *Id*. at 826. Here, the PCRA court did not opine on the credibility of the new recantation, but instead reviewed the significance of Devon Henry's new and different recantation to the recantation he had asserted at trial. We find no error in the PCRA court's ruling that Appellant did not demonstrate a different outcome was likely.

In Appellant's final claim, he asserted that he learned of Detective Crone's misconduct on or about November 16, 2021, and first raised a claim based on it in the Amended Petition filed on March 10, 2022. We agree with the PCRA court that this claim was timely raised under the exception for newly discovered facts.

The PCRA court fully addressed the merits of Appellant's claim of after-discovered evidence:

> [Appellant's] claim is premised upon a Philadelphia Police Department misconduct disclosure form and a newspaper article detailing two instances of misconduct by Detective Crone. Second Amended Petition, Exhibit D. The misconduct disclosure form shows that there was a sustained finding of misconduct on the part of Detective Crone related to an instance of domestic violence. *Id*. The newspaper article details a racially charged letter that Detective Crone wrote to other officers in his unit in 2018. *Id*. Defendant argues that evidence of Detective Crone's misconduct is relevant since Detective Crone took part in taking Devon's statement. Second Amended Petition at pp. 4-5.

[Appellant's] argument regarding the relevance of the misconduct is unavailing. Both incidents are completely unrelated to [Appellant's] case. The evidence showing that Detective Crone wrote a racially charged letter, while troubling, would not be relevant because race was not an issue in this case. The victim, [Appellant], and all the eyewitnesses were African American. An act of domestic violence, while also troubling, does not provide proof that Detective Crone misbehaved in his work on [Appellant's] case.

Moreover, while [Appellant] is correct that Detective Crone took Devon's statement, he did so in the presence of Detective Kane. *See* N.T. 12/19/12 at 10-12. [Appellant] did not present, and the Court is unaware of, any misconduct findings on the part of Detective Kane. Besides the interview of Devon, Detective Crone played a limited role in the investigation as Detective Marano was the assigned detective. N. T. 12/19/12 at 6-10, 40-41.

PCRA Court Opinion, 14-15.

We agree with the PCRA court's analysis. The only theory of relevancy offered by Appellant before the PCRA court was that Devon Henry had "recanted and said that he was forced to sign a statement that was incorrect," and the detective who took the statement was subsequently under investigation. Second Amended Petition, 5; Trial Court Record, 536. The incidents of misconduct cited against Detective Crone, however, were wholly unrelated to Appellant's case.[11] They also would not be probative of a pattern of coercing homicide witnesses to give statements that are "incorrect."

_____

[11] In the first, the Philadelphia Police Department Office of Professional Responsibility investigated and sustained a finding of forceful, physical contact by Detective Crone during a dispute with his domestic partner on March 22, 2012. This incident happened before trial, but the completion of the investigation resulting in an "official reprimand" was nearly a year after trial, November 25, 2013. In the second, Appellant appended an August 29, 2018, newspaper article naming Detective Crone as the person who wrote a racially

*(Footnote Continued Next Page)*

We note further that the proffer of a newspaper article is insufficient to establish that Appellant had readily producible evidence. ***Castro***, 93 A.3d at 825-826 ("allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation; … it is double hearsay, as it is the reporter relaying what he or she has been told by another person"). A hearing on after-discovered evidence "is for the presentation of evidence, not the potential discovery of evidence; 'An evidentiary hearing ... is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim.'" ***Id***. at 827-828 (quoting **Commonwealth v. Scott***, 752 A.2d 871, 877 n. 8 (2000)). Appellant did not name any witnesses he would produce at a hearing. ***See Commonwealth v. Perrin***, 108 A.3d 50, 54 (Pa. Super. 2015) (distinguishing ***Castro*** and remanding for a hearing because the appellant named proposed witnesses). Thus, Appellant did not produce evidence of on-duty misconduct to establish a pattern, which was the prerequisite to his theory of relevance.

_____

charged and caustic letter to the members of his unit to clean up after eating at a workstation. Second Amended Petition, Attachment D. The article does not state when the incident took place, but inferentially, it was well after trial in this matter. Providing context, the article states that the then Police Commissioner "was 'perplexed' that a seemingly mundane office dispute would generate such rancor from a seasoned detective." ***Id***. The article also states that the "commissioner said Crone was generally well-respected and did not appear to have been the subject of many complaints during his two-decade career, 12 years of which he has spent in homicide." ***Id***. An isolated incident of over-the-top office discord and an instance of domestic violence are not probative of a "generally well-respected" detective's supposed on-duty coercion of a witness statement.

- 22 -

Even if the proffered evidence could be used to establish bias on the part of Detective Crone,[12] that would be insufficient. In seeking a new trial. An appellant "must demonstrate he will not use the alleged after-discovered evidence solely to impeach the credibility of a witness." ***Padillas***, 997 A.2d at 365. ***See also Commonwealth v. Trinidad***, 96 A.3d 1031, 1037 (Pa. Super. 2014) (after-discovered evidence that Rosado, a trial witness, had told another person "that the shooter was a black male and that the district attorney's office was pressuring him to identify Appellant as his assailant" was only a new basis for impeaching Rosado's identification testimony and did not warrant a new trial); ***Commonwealth v. Bormack***, 827 A.2d 503, 507 (Pa. Super. 2003) (new trial not warranted for after-discovered evidence where "the value of the evidence was as impeachment evidence alone").

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/24/2024

---

[12] We do not rule whether the proffered evidence would be admissible to prove bias, as one incident occurred years after trial, and the other was still under investigation at the time of trial. The proffered evidence would not be admissible to impeach Detective Crone's character for truthfulness as the two instances represent extrinsic evidence of collateral misconduct. Pa.R.E. 608(b)(1); ***Commonwealth v. Sanchez***, 848 A.2d 977, 984 (Pa. Super. 2004).