J-E04005-17

2018 PA Super 109

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ROBERT E. ROBINSON :
:
Appellant : No. 3515 EDA 2015

Appeal from the PCRA Order October 27, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0718101-1982

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J., and DUBOW, J.

OPINION BY BOWES, J.: **FILED MAY 02, 2018**

Robert E. Robinson appeals from an order dismissing two PCRA petitions as untimely. Appellant alleges that he is entitled to an evidentiary hearing with respect to the petition filed June 19, 2015, since the PCRA court analyzed the underlying merits of his substantive claim. While we agree that the PCRA court erred, we affirm on the basis that Appellant failed to establish due diligence.

We previously set forth the facts underlying Appellant's conviction in our order denying his third petition for PCRA relief, which we repeat herein.

> On June 25, 1982, Appellant and a cohort were in the process of breaking into a car for the purpose of stealing it when they were confronted by the car's owner, the victim. Appellant shot the victim four times and escaped with his cohort in another stolen vehicle; the victim died. Approximately one week later, Appellant was questioned about the crime, and he ultimately was charged with murder, robbery, criminal conspiracy, and possession of an instrument of crime. On July 1, 1983, Appellant pled guilty to

second degree murder and criminal conspiracy. He received a life sentence for the murder conviction and a concurrent sentence of ten-to-twenty years confinement for conspiracy. Appellant asserted on direct appeal that his trial counsel was ineffective and that his guilty plea was involuntary. We affirmed the judgment of sentence on March 1, 1985.

**Commonwealth v. Robinson**, 2347 EDA 2000 (Pa.Super. 2001) (unpublished memorandum).

This appeal concerns an order dismissing Appellant's eighth and ninth attempts to secure PCRA relief.[1] The eighth petition submitted that Appellant was entitled to relief pursuant to **Miller v. Alabama**, 567 U.S. 460 (2012). While that petition was pending, Appellant filed another petition, docketed June 19, 2015. The petition contained numerous allegations concerning drug use by his plea counsel, Richard Michaelson, Esquire. The petition alleged that "At the time of trial/guilty plea . . . my counsel suffered from the effects of cocaine abuse. He was ingesting, [c]ocaine, and because of counsel's [c]ocaine addiction, 'his mind was befog[ged], disordered by paranoid thoughts and the belief that he was in control when he was not.'" *Pro se* PCRA petition, 6/19/15, at 4. The petition alleged that this drug use "impaired his ability to represent [me] in a Constitutionally sufficient manner." **Id**.

---

[1] The PCRA court disposed of the two petitions in one overarching order, treating each as separate petitions. We recently issued **Commonwealth v. Montgomery,** --- A.3d ---, 2018 WL 1311961 (Pa.Super. 2018) (*en banc*), holding that PCRA courts are not jurisdictionally barred from considering serial PCRA petitions provided that there is not a pending appeal of a PCRA petition.

The petition included sworn affidavits prepared by Appellant and Bruce Quarles, a fellow prisoner, which related the following. Mr. Quarles overheard Appellant complaining about trial counsel. Mr. Quarles informed Appellant that he knew of trial counsel and supplied documentation regarding Attorney Michaelson's purchase of cocaine in the Caribbean Islands during May of 1982, around the time of Appellant's plea. Additionally, Mr. Quarles stated that he knew Attorney Michaelson had been convicted of drug offenses in federal court, and told Appellant "he would bring the transcripts and newspaper articles to the law library and I could make photo copies of the newspaper articles and the transcripts. This is how I obtained the after [d]iscovered [e]vidence on April 28, 2015." *Pro se* PCRA petition, 6/19/15, at 4-A.

Appended to the petition were three additional exhibits: a newspaper article dated May 29, 1982, stating that Attorney Michaelson was fired from his job as an Assistant District Attorney in Philadelphia due to an FBI informant alleging Attorney Michaelson had purchased cocaine; a transcript of trial counsel's plea to possession of drugs in the Eastern District of Pennsylvania on April 29, 1994; and, a newspaper story reporting the 1994 conviction. The plea transcript indicates that in 1991 through June 1992, Attorney Michaelson regularly purchased cocaine from a dealer. During the plea hearing, Attorney Michaelson stated that he had been using cocaine since approximately 1979. According to Appellant, his receipt of this statement marked the first time he was aware that trial counsel was using

cocaine at a time period relevant to his case, prompting him to file the untimely PCRA petition at issue.

The PCRA court dismissed the petition on the basis it was untimely, and explained its ruling in its Pa.R.A.P. 1925(a) opinion:

> [Appellant]'s claim does not constitute after-discovered evidence, and his argument is not convincing. Trial counsel represented [Appellant] in 1983. Counsel pled guilty to drug trafficking offenses that occurred between 1991 and 1992. [Appellant] cannot reasonably claim that trial counsel's subsequent legal problems impacted his decision to plead guilty a decade earlier. Aside from allegations contained in an article, [Appellant] has not provided any evidence to suggest that counsel's representation as it related to [Appellant]'s specific case was improper. [Appellant] has failed to demonstrate that any of the exceptions to the limitations of the PCRA apply to his case.

PCRA Court Opinion, 11/16/15, at 4.

On appeal, a panel of this Court unanimously determined that Appellant was not entitled to relief on his petition seeking to raise a *Miller* claim. The panel split with respect to the other petition. The majority determined that the PCRA court improperly considered the merits of Appellant's underlying claim in dismissing the PCRA petition, and, as a result, held that a remand for an evidentiary hearing was required to determine whether Appellant properly pled the § 9545(b)(1)(ii) exception. The dissent, written by this author, agreed that the PCRA court applied the wrong inquiry by assessing the merits of the claim in determining the timeliness of the petition, but would have affirmed on the alternative basis

that Appellant failed to establish his due diligence. Additionally, the dissenting memorandum opined that the petition did not set forth any facts that could ever entitle him to relief.

The Commonwealth filed for reargument, asserting that a remand would result in a needless expenditure of time and expense in this and similar cases. We granted *en banc* review and appointed counsel to represent Appellant's interests. The parties submitted substituted briefs and the matter is ready for our review. Appellant raises the following issue:

> Should the PCRA court have held an evidentiary hearing on Appellant's claim regarding trial counsel's drug offenses for purposes of determining whether Appellant met the timeliness exception for newly discovered facts?

Appellant's brief at 3.

Our standard of review examines "whether the PCRA court's determination is supported by the evidence of record and free of legal error. We grant great deference to the PCRA court's findings, and we will not disturb those findings unless they are unsupported by the certified record." *Commonwealth v. Holt*, 175 A.3d 1014, 1017 (Pa.Super. 2017) (citation omitted). A PCRA petition must be filed within one year of the date the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). "This time constraint is jurisdictional in nature, and is not subject to tolling or other equitable considerations." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017) (citation omitted). The time bar can "only be overcome by satisfaction of one of the three statutory exceptions codified at 42 Pa.C.S. §

9545(b)(1)(i)–(iii)." *Id*. "Questions regarding the scope of the statutory exceptions to the PCRA's jurisdictional time-bar raise questions of law; accordingly, our standard of review is *de novo*." **Commonwealth v. Chester**, 895 A.2d 520, 522 n.1 (Pa. 2006).

Since Appellant's judgment of sentence became final long ago, Appellant averred that these facts satisfied the second of the three exceptions to the PCRA's one-year time bar. These exceptions are:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).[2] Additionally, any petition seeking to invoke one of these three exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

The instant petition was filed on June 19, 2015, over thirty years after Appellant's judgment of sentence became final and therefore patently

---

[2] Appellant also invoked the interference by government officials exception, but abandoned that position on appeal.

untimely under the PCRA. Appellant avers that he satisfied the exception set forth at § 9545(b)(1)(ii) because he first became aware of trial counsel's 1994 plea on October 20, 2014, and thereafter immediately sought to obtain the transcripts from federal court. He alleges that he received those materials on April 28, 2015, giving him sixty days to file for relief pursuant to 42 Pa.C.S. § 9545(b)(2). Since the June 19, 2015 petition was within sixty days of when he received the plea transcript, Appellant avers that the petition is timely.

There are two additional points germane to our review. Our Supreme Court has made plain that the analysis of whether a PCRA petitioner has satisfied the § 9545(b)(1)(ii) time-bar exception is analytically distinct from the merits of any substantive claim seeking relief. As stated in *Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007):

> The text of the relevant subsection provides that "the facts upon which the claim is predicated were unknown to petitioner and could not have been ascertained by due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). . . . [T]he plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, it simply requires petitioner to allege and prove that there were "facts" that were "unknown" to him and that he exercised "due diligence."

*Id*. at 1270.

With respect to the exercise of due diligence, Appellant's own petition acknowledges that newspaper coverage from 1982 mentioned counsel's drug use. Therefore, a question naturally arises as to whether he acted with due diligence in ascertaining the newly-discovered facts of the 1994 plea as

- 7 -

relied upon by Appellant. In response, Appellant relies on ***Commonwealth v. Burton***, 158 A.3d 618 (Pa. 2017), issued after our original panel decision. ***Burton*** held that, for purposes of § 9545(b)(1)(ii)'s requirement that the facts be unknown, materials in the public record are not presumptively known to an incarcerated *pro se* petitioner. Appellant also emphasizes that any available facts speaking to counsel's drug usage in general is irrelevant, as the proper question is "when did Appellant learn that Mr. Michaelson [was] using cocaine at a time period **relevant to Appellant's case**[?]" Appellant's brief at 14 (emphasis in original). Appellant argues that his failure to discover the 1994 plea transcript does not preclude a finding of due diligence in light of ***Burton***, as he first learned of the plea from Mr. Quarles.

Taken together, Appellant maintains the following. First, pursuant to ***Bennett***, the PCRA court erred by considering the merits of the underlying substantive claim, *i.e.* by determining counsel's subsequent drug problems could not be used to attack his plea a decade earlier. Next, under ***Burton***, he cannot be deemed presumptively aware of Attorney Michaelson's plea to federal charges, which became a matter of public record sometime in 1994.[3] Appellant contends that the PCRA court's error requires an evidentiary

---

[3] We assume *arguendo* that ***Burton***'s rule applies retroactively and excuses the failure to find publicly-available information from 1994 up through the time he filed his petition.

hearing for the purpose of establishing the applicability of the newly-discovered fact exception to the PCRA's time bar.

As previously quoted, the PCRA court determined that Appellant's claim "does not constitute after-discovered evidence, and his argument is not convincing." PCRA Court Opinion, 11/18/15, at 4. The Commonwealth agrees with Appellant's conclusion that the PCRA court conducted a merits analysis of the underlying claim, which is improper under prevailing law. We likewise agree, but find that the PCRA court correctly dismissed the petition because Appellant failed to establish his due diligence. We affirm on this alternative ground. **See Commonwealth v. Cox**, 146 A.3d 221, 229–30 (Pa. 2016) (while PCRA court erred in applying newly-discovered fact inquiry, order affirmed as Cox failed to act with due diligence).

At this juncture, we briefly address the distinction between a PCRA petition and the claims contained within a jurisdictionally proper petition. Our analysis begins there because the connection between the facts discovered by Appellant regarding counsel's drug use and the underlying claim is, as we shall explain, relevant to the due diligence inquiry.

In **Bennett**, **supra**, our Supreme Court stated that the subsection (b)(1)(ii) exception merely requires the PCRA petitioner "to allege and prove that there were 'facts' that were 'unknown' to him and that he exercised 'due diligence.'" **Id**. at 1270. The fact at issue in **Bennet** was PCRA counsel's failure to file a brief on appeal from an order denying a timely PCRA petition.

Bennett then filed an untimely PCRA petition seeking reinstatement of his PCRA appellate rights, invoking § 9545(b)(1)(ii). **Bennett** determined that "[Bennett]'s allegations bring his claim within the ambit of subsection (b)(1)(ii) . . . he must also prove that the facts were 'unknown' to him and that he could not uncover them with the exercise of 'due diligence.'" **Id**. at 1274. The Court noted that prior precedents frequently, but mistakenly, described 42 Pa.C.S. § 9545(b)(1)(ii) as the after-discovered evidence exception to the one-year time bar, even though "the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'" **Id**. at 1270 (footnote omitted).

The tendency to erroneously label § 9545(b)(1)(ii) as the after-discovered evidence exception is largely explained by the fact that PCRA petitioners presenting newly-discovered facts as justification for an untimely PCRA often, but not always, seek to raise a claim that those facts constitute evidence that would have changed the outcome at trial. 42 Pa.C.S. § 9543(a)(2)(vi) ("The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."). As our Supreme Court explained in **Cox**, **supra**, that labeling error

> is not novel, especially in the context of cases in which the petitioner invokes both of these provisions in his or her quest for relief. This is not always the case, as the section 9545(b)(1)(ii) timeliness exception is not only invoked in connection with claims of after-discovered evidence as contemplated by section 9543(a)(2)(vi); *i.e.*, claims based on exculpatory evidence that

would result in a different verdict. For instance, petitioners have utilized the section 9545(b)(1)(ii) timeliness exception in an attempt to raise claims of the constructive denial of counsel, violations of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and claims of racial prejudice on the part of the trial judge. *See Commonwealth v. Gamboa– Taylor*, 620 Pa. 429, 67 A.3d 1245 (2013); *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978, 982–84 (2008); *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 721 (2008); *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 588 (2000); *Commonwealth v. Abu–Jamal*, 574 Pa. 724, 833 A.2d 719, 735 (2003). In each of those cases, the nature of the claims raised did not implicate section 9543(a)(2)(vi), but rather, fell under other categories of claims eligible for relief.

*Id*. at 229–30.

Thus, while there is a natural interplay between 42 Pa.C.S. § 9545(b)(1)(ii)—which serves to create jurisdiction for the PCRA court to entertain an otherwise untimely PCRA petition—and the merits of any claim that could be raised under the petition once jurisdiction is actually conferred, *Bennett*, as reiterated by *Cox*, warns against any analysis of the substantive claim. *Cox* noted that a merits analysis is permissible only upon a finding of jurisdiction: "Once jurisdiction has been properly invoked (by establishing either that the petition was filed within one year of the date judgment became final or by establishing one of the three exceptions to the PCRA's time-bar), **the relevant inquiry becomes** whether the claim is cognizable under the PCRA." *Cox*, *supra* at 227-28 (emphasis added). Moreover, *Cox* does not limit that admonishment to petitions seeking to raise a claim based on newly-discovered evidence. *Id*. at 230 ("In such

- 11 -

cases, **after** concluding that the petition satisfied the section 9545(b)(1)(ii) timeliness exception, the PCRA court would not proceed to a section 9543(a)(2)(vi) analysis.") (emphasis added).

Simultaneously, while **Bennett** and its progeny instruct courts to avoid analyzing the merits of the underlying claim, we believe that principle cannot go so far as to altogether preclude the courts from considering the claim the petitioner seeks to raise in determining whether an evidentiary hearing is warranted. As an extreme example, suppose an incarcerated PCRA petitioner asserted in an untimely petition that he recently discovered that the Houston Astros won the 2017 World Series. It would defy reason to suggest that a PCRA court must hold an evidentiary hearing to carefully apply the newly-discovered fact inquiry before considering how that fact could possibly matter. **Cox** stated that "The function of a section 9545(b)(1)(ii) analysis is that of a gatekeeper." **Id**. at 229 n.11. A gatekeeping function contemplates that there may be a reason to open the gate.

The instant claim is not as fanciful as the foregoing example. Nevertheless, it is difficult to perceive the connection between trial counsel's legal issues which occurred almost a decade after Appellant's guilty plea and how that fact ultimately matters. Appellant seeks to link counsel's drug use to the voluntariness of his plea. "Appellant alleged that trial counsel had a substance abuse issue in the early 1980s and **that counsel's addiction**

**caused Appellant to enter an invalid plea**." Appellant's brief at 4 (emphasis added). Recognizing the nature of the underlying claim—as distinguished from assessing its merits—is necessary to determine whether Appellant acted with due diligence in unearthing the newly-discovered facts.

For instance, in **Commonwealth v. Chmiel**, 173 A.3d 617 (Pa. 2017), our Supreme Court held that the PCRA court incorrectly dismissed an untimely PCRA petition relying on newly-discovered facts. On April 20, 2015, the Federal Bureau of Investigation ("FBI") issued a press release admitting that microscopic hair analysis, such as the type used in Chmiel's prosecution, was erroneous in the vast majority of cases. **Id**. at 619. That press release disclosed the findings of an ongoing investigation summarizing the defects in such testing. Chmiel filed an untimely petition within sixty days of April 20, 2015. The PCRA court had determined that the FBI press release "was simply confirmation of information that was already available in the public domain." **Id**. at 625. Our Supreme Court rejected such a narrow view of the pertinent newly-discovered facts.

> [T]he fact that the FBI was internally reviewing the accuracy of microscopic hair analysis or testimony is not the newly discovered fact upon which Chmiel's claim is based. Rather, the newly discovered facts are the FBI's admissions, as the proponent of microscopic hair analysis, that its examiners gave flawed and scientifically unsupportable testimony, and spread its flawed methodology to state and local analysts. Although the existence of the FBI's internal investigation was known, the press release marked the first public admission by the FBI regarding its conclusions about testimony premised upon microscopic hair analysis and the dissemination of such

scientifically flawed language to state and local analysts. *Id*. at 626.

In analyzing whether Chmiel could rely upon the FBI report as the basis for his untimely PCRA petition, the Court stated, "There are two newly discovered facts upon which Chmiel's underlying claim is predicated, both of which were made public for the first time in the *Washington Post* article and the FBI press release." *Id*. at 625. Hence, a recognition of "the underlying claim" was relevant to Chmiel's invocation of the § 9545(b)(1)(ii) exception, even if that analysis did not assess the strength of those newly-discovered facts as it bore on the likelihood of ultimately achieving relief. *See id*. at 626 n.7 ("We disagree with Justice Mundy's position that Chmiel must, at this juncture, demonstrate a more 'direct connection' between the FBI press release and his underlying claim. Chmiel's underlying claim is that his conviction rests upon unreliable hair comparison evidence in violation of the United States and Pennsylvania Constitutions."); *id*. at 629 ("As I understand **Bennett**, no further analysis concerning the relationship between the newly-discovered fact and the underlying merits-based claim is necessary or appropriate in the jurisdictional assessment.") (Saylor, C.J, joined by Baer, J.).

Having set forth these principles, we now review the particular claim Appellant seeks to raise in order to determine whether a remand for an evidentiary hearing is warranted. His petition alleged that counsel was

"befog[ged] and disordered by paranoid thoughts," and, as a result, Appellant's plea was involuntarily entered. Thus, the connection between counsel's alleged intoxication on the day of Appellant's plea, the newly-discovered fact he relies on to confer jurisdiction, and any substantive claim Appellant would ultimately seek to raise within that petition is that counsel's mental state was so deteriorated that his advice was constitutionally deficient. That claim is captured by the following test:

> A criminal defendant has the right to effective counsel during a plea process as well as during a trial. **Hill v. Lockhart**, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. **Commonwealth v. Allen**, 557 Pa. 135, 732 A.2d 582 (1999). Where the defendant enters his plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" **Hill**, 474 U.S. at 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (quoting **McMann v. Richardson**, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

**Commonwealth v. Hickman**, 799 A.2d 136, 141 (Pa.Super. 2002).

Recognizing that Appellant's claim challenges counsel's mental state on the day of Appellant's plea, we find that Appellant failed to act with due diligence in uncovering the "facts upon which [his] underlying claim is predicated[.]" **Chmiel**, **supra** at 625. As the Commonwealth observes, "Any deficiency in plea counsel's representation . . . must necessarily have existed (if it existed at all) at the time of the plea." Commonwealth's brief at 14. We agree. In essence, Appellant argues that he had no due diligence

- 15 -

obligations prior to speaking to Mr. Quarles in 2014, as Appellant was unaware of plea counsel's subsequent federal prosecution. According to Appellant, that was the first time he learned that "Mr. Michaelson [was] using cocaine at a time period **relevant to Appellant's case**." Appellant's brief at 14 (emphasis in original). This conclusion fails to account for the fact that "Due diligence demands that the petitioner take reasonable steps to protect his own interests." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015) (citation omitted). Appellant always "knew" that his counsel supplied ineffective advice, and he has failed to show why he could not have learned these newly-discovered facts at an earlier time.

Consequently, we reject Appellant's attempt to tailor his newly-discovered fact analysis to Mr. Quarles's information. There are situations in which a petitioner may passively rely on learning information as opposed to actively seeking out those facts. *See Commonwealth v. Medina*, 92 A.3d 1210 (Pa.Super. 2014) (*en banc*) (PCRA petition based on newly-discovered facts was timely where witnesses contacted the defendant and recanted their testimony, claiming that police detective coerced their statements; Medina was not required to contact the witnesses because he had no reason to suspect the coercion and no duty to engage in a fishing expedition as to why witnesses lied). In contrast to *Medina*, counsel's ineffectiveness would

have been obvious to Appellant back in 1983. Therefore, he bore the duty to seek out the facts that would support any such claim.[4]

Having established that Appellant failed to exercise due diligence, we find that **Burton** does not compel a different result. **Burton** holds only that material in the public record is not presumptively known to an incarcerated *pro se* PCRA petitioner just because that information is publicly available. Pre-**Burton**, Appellant was presumably constructively charged with the knowledge of counsel's plea when the record became available in 1994, therefore requiring him to file for relief within sixty days of its publication. **See** 42 Pa.C.S. 9545(b)(2) (claim must be filed within sixty days of date it could have been presented). However, it does not follow from **Burton** that Appellant is relieved of his duty to seek out facts as a matter of due diligence. **Burton** modifies the "unknown" nature of public facts as applied to incarcerated *pro se* PCRA petitioners, but the case did not modify the due diligence inquiry. The pertinent statutory exception requires the petitioner

_____

[4] The inability to consider the merits of the underlying ineffectiveness claim poses complexities in that it is difficult to divorce the purported newly-discovered fact of counsel's guilty plea from what that newly-discovered fact would actually prove, *i.e.*, counsel's use of cocaine during the relevant timeframe. "The focus of the exception is 'on [the] newly discovered *facts,* not on a newly discovered or newly willing source for previously known facts.'" **Commonwealth v. Marshall**, 947 A.2d 714, 720 (Pa. 2008) (quoting **Commonwealth v. Johnson**, 863 A.2d 423, 427 (Pa. 2004)).

to establish that "the facts upon which the claim is predicated were unknown to the petitioner **and** could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii) (emphasis added). Formerly, there was no need to proceed to a due diligence analysis when a petitioner untimely relied on a public record, since the public nature of the facts rendered them known. In *Commonwealth v. Chester*, 895 A.2d 520 (Pa. 2006), which applied a presumption that the record of trial counsel's DUI arrest was known due to its public availability, Justice Baer filed a concurring opinion which disposed of the claim on the alternative basis of due diligence:

> Whereas the majority would find that counsel's DUI arrest was public record, and therefore, generally discoverable through an exercise of due diligence on the part of [Chester], I would find that the particular circumstances of this case lead to the conclusion that PCRA counsel, through the exercise of diligence, should have uncovered counsel's DUI arrest. Specifically, the allegations made by PCRA counsel in [Chester]'s first PCRA petition indicate that by exercising due diligence, PCRA counsel would have further uncovered trial counsel's criminal history. Thus, I would not go so far as the majority does to hold that criminal defendants are generally responsible for the arduous task of uncovering the criminal record of their attorney, where no basis for such discovery exists. For the following reasons, I concur.
>
> The majority opinion posits that trial counsel's DUI arrest could not be characterized as "unknown" to [Chester] because the information was a matter of public record. I believe, however, that there is danger in placing such an onerous burden on a criminal defendant to search public records to determine whether there are pending charges against his attorney during that defendant's trial. Rather, in affirming, I would rely solely upon the record *sub judice,* and conclude that if where, as here, PCRA counsel, who represented Appellant at his first PCRA hearing, had exercised due diligence, he would have uncovered trial counsel's DUI arrest. Because PCRA counsel for Appellant

alleged during the first PCRA proceeding that trial counsel had a substance abuse problem and had been suspended from practicing law, there was some basis upon which to suspect that further investigation of trial counsel may have uncovered relevant information.

*Id*. at 524–25 (Baer, J., concurring).

That analysis applies to the instant case. The nature of Appellant's claim supplied a basis for Appellant to seek out information that would support his allegation. It is readily apparent from his twenty-year delay that he failed to do so in a duly diligent manner. We therefore affirm the dismissal of the PCRA petition on that alternative basis.[5]

_____

[5] While we find that the absence of due diligence serves to affirm the instant order, we note our belief that Appellant's newly-discovered facts could not lead to relief even if Appellant possessed indisputable proof that counsel had ingested cocaine on the day of Appellant's plea. We agree with the United States Court of Appeals for the Ninth Circuit that the relevant inquiry would be the reasonableness of the advice itself: "Because we conclude . . . that [counsel]'s performance did not fall below the standard of objective reasonableness, it is irrelevant whether [counsel] used drugs." *Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995).

As explained at length *supra*, precedents from our Supreme Court direct the courts to ignore the merits of the PCRA claim when assessing the jurisdictional timeliness question. Arguably, it is consistent with that principle to simply accept that the newly-discovered facts are true in order to winnow out claims that could not possibly lead to relief. The admonishment against a merits analysis of the underlying claim seems designed to prevent a preemptive finding that the newly-discovered facts are either not worthy of belief or would not, on balance, undermine the reliability of the verdict even if true. On the other hand, accepting these newly-discovered facts as true gives every benefit of the doubt to the petitioner. Nevertheless, our Supreme Court has not sanctioned this approach to an analysis of the newly-discovered facts, and we therefore decide this case on the basis of due diligence.

Order affirmed.

President Judge Emeritus Bender joins the opinion.

Judge Panella joins the opinion.

Judge Shogan joins the opinion.

Judge Lazarus joins the opinion.

Judge Olson joins the opinion.

Judge Stabile joins the opinion.

Judge Dubow joins the opinion.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/18