J-S28006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GRIFFIN T. CAMPBELL | : | |
| | : | |
| Appellant | : | No. 2489 EDA 2023 |

Appeal from the PCRA Order Entered September 8, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0001793-2014

BEFORE:  STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 1, 2024**

Appellant, Griffin T. Campbell, appeals from an order dismissing his second petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The trial court summarized the evidence in this case as follows:

Richard Basciano was the owner of a group of properties located on the 2100 and 2200 blocks of Market Street in Philadelphia.  In 2011, Basciano, and his property holding company STB, hired architect Plato Marinakos to assist in the development of that area.  Around September of 2012, Basciano enlisted the aid of Marinakos to accomplish the demolition of several buildings as part of the development project.

In order to find a demolition contractor, Marinakos solicited bids from four companies that he had worked with before, including [Appellant]'s company.  [Appellant] was, by far, the lowest bidder, and was hired.  In May 2013, [Appellant] began demolition of the buildings on the 2100 block, including the building located at 2136 Market Street, which formerly housed a Hoagie City restaurant ("the Hoagie City building").  The Hoagie City building was a four-story structure that shared a wall with the Salvation Army Thrift Store immediately to its west (the shared "western wall").  The

Salvation Army Thrift Store was not owned by Basciano and was still an ongoing business.

As the demolition contractor, [Appellant] was in control of the means and methods of demolition. [Appellant] was also in charge of on-site safety. As [Appellant] worked to demolish the Hoagie City building, [Appellant] ordered the removal of the horizontal floor joists, which [Appellant] then resold for salvage, leaving the building without lateral support. By removing the joists, [Appellant] also removed the ability for workers to take the building down by hand, as the internal floors were now left without support. [Appellant] was told multiple times that removing the joists was rendering the building unsafe.

In an attempt to continue demolition without using the internal floors, [Appellant] sought permission from the Salvation Army to continue the demolition work from the Salvation Army building roof, but this permission was denied. Without access to the Salvation Army roof, [Appellant] informed Marinakos that he would have to tear the building down from the inside, and so the demolition would be harder. [Appellant] could have rented a "high reach" to effectuate the demolition, but chose not to due to costs.

[Appellant] hired co-defendant Sean Benschop in April to assist with the demolition. Benschop owned an excavator used in the demolition. While the Hoagie City building was being demolished, and after it had been gutted, Benschop told Campbell that [Appellant] would need a high reach in order to knock down the building's western wall.

On June 2, 2013, [Appellant] ordered Benschop to demolish the front wall of the Hoagie City building with his excavator, removing one of the two walls supporting the western wall and leaving the western wall almost completely free standing. On that day, Benschop voiced concerns about the western wall, and [Appellant] indicated that he would take care of it. On June 3, 2013, no demolition work was done due to rainy weather.

Demolition work on the western wall continued on June 4, 2013, and included the partial removal of the eastern wall by Benschop and the excavator. Although Benschop told [Appellant] that it was dangerous to use the excavator at that time, [Appellant] directed Benschop to continue to use it. That day, Marinakos visited the

2

site to take pictures and, seeing the freestanding western wall, told [Appellant], "You have to take this wall down immediately." [Appellant] told Marinakos that [Appellant] would take care of it, and that he had men coming that night to get up on the Salvation Army roof to lower the wall.

That night, [Appellant] had several workers go up on the Salvation Army roof [to] work on removing parts of the wall. These workers also informed [Appellant] that the wall was unsecure. They were not able to significantly lower the unsupported portions of the wall. At this time, the wall was in an imminent state of collapse and a gust of wind could have knocked it down.

On the morning of June 5, 2013, demolition work at the site continued. Although the unsupported wall loomed over the Salvation Army building, the thrift store remained open for business. [Appellant] called Marinakos and falsely stated that the wall had been taken down.

That same morning, [Appellant] ordered Benschop to work on demolishing the eastern wall with a pry tool in the jaws of the excavator. Benschop began working on the eastern wall as directed and, at approximately 10:41 a.m., the western wall collapsed and fell onto the Salvation Army building, collapsing the roof into the store. Immediately after the collapse, [Appellant] called Marinakos and told him to come to the scene. [Appellant] also told Marinakos that the excavator was being used, that it hit the western wall, and that the western wall had collapsed.

Rescue workers and emergency personnel arrived and attempted to search the construction pile for survivors. The rescue operation continued throughout the day and into the next morning. [Appellant] later called Marinakos and apologized for the collapse. Benschop, who was injured in the collapse, was transported to the hospital by another co-worker.

As a result of the collapse, Kimberly Finnegan, Juanita Harmon, Roseline Conteh, Borbor Davis, Ann Bryan, and Mary Simpson were killed. The collapse seriously injured Mariya Plekan, resulting in a year-long hospital stay, multiple surgeries, and the amputation of both her legs. Rosemary Kreutzberg was trapped in the rubble, resulting in three days of hospitalization. The collapse also placed numerous other people at risk as they were

3

on or near the site at the time of the collapse. Emergency medical personnel also assisted pedestrians who were off to the side of the street at the time of the collapse.

Following the collapse, [Appellant] informed Marinakos that the excavator was being used in the demolition just prior to the collapse. However, in [Appellant]'s initial interview with OSHA investigator Sarah Carle, [Appellant] denied that the excavator was in use at the time of the collapse. [Appellant] did ultimately admit to Carle that the excavator was running and was being used in demolition at the time.

Pa.R.A.P. 1925 Opinion, 3/10/17, at 4-8 (citations omitted).

On October 19, 2015, following a jury trial, Appellant was convicted of one count of causing a catastrophe (18 Pa.C.S.A. § 3302), six counts of involuntary manslaughter (18 Pa.C.S.A. § 2504), thirteen counts of recklessly endangering another person ("REAP") (18 Pa.C.S.A. § 2705), and one count of aggravated assault (18 Pa.C.S.A. § 2702). On January 8, 2016, the trial court imposed an aggregate sentence of fifteen to thirty years' imprisonment. Appellant filed post-sentence motions, which the Court denied on May 13, 2016. On September 5, 2018, the Superior Court affirmed Appellant's judgment of sentence, and on January 28, 2019, the Supreme Court denied allocatur. William Hobson, Esquire represented Appellant during trial and on direct appeal.

On February 12, 2019, Appellant filed a *pro se* PCRA petition. On March 19, 2019, George Henry Newman, Esquire entered his appearance on behalf of Appellant. On May 13, 2019, Newman filed an amended PCRA petition. On January 10, 2020, the PCRA court dismissed the amended petition. Appellant

timely appealed, and on September 1, 2021, this Court affirmed. On January 27, 2022, Appellant, represented by Earl Kauffman, Esquire, petitioned for allocatur, which the Supreme Court denied on August 3, 2022.

On September 1, 2022, Appellant filed a second PCRA petition, the petition presently under review. On September 19, 2022 and November 19, 2022, he filed supplements to the petition. The Commonwealth moved to dismiss Appellant's second petition. On March 17, 2023, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's second petition without a hearing. On April 4, 2023, Appellant requested additional time to respond to the Rule 907 notice. On April 10, 2023, the PCRA court granted Appellant's request and gave him until May 10, 2023 to file a response. On April 13, 2023, Appellant filed a "Judicial Notice of Adjudicative Material Facts Pursuant to Pa.R.E. 201; Alternatively, Written Objections and Responses to Notice Pursuant to Pa.R.Crim.P. 907(1)." On May 3, 2023, Appellant filed a "Supplement Response to 907 Notice." On June 20, 2023, Appellant filed a "Judicial Notice of Adjudicative [Relevant and Material] Facts Pursuant to Pennsylvania Rule of Evidence 201 *et seq*." On August 2, 2023, the Commonwealth responded to all three of Appellant's responses.

On September 8, 2023, the PCRA court dismissed Appellant's second PCRA petition. Appellant timely appealed, and he later filed a Pa.R.A.P. 1925 statement. The PCRA court found that the Rule 1925 statement was vague

5

and prolix, but it was able to discern five claims in the statement which it then proceeded to address in a Pa.R.A.P. 1925 opinion.

Appellant raises the following issue in his *pro se* brief:

I. THE COURT BELOW COMMITTED REVERSIBLE ERROR BY FAILING TO SERVE A PREDISMISSAL NOTICE, EXPLAINING ITS REASONS FOR DENYING AND DISMISSING [APPELLANT'S] SUPPLEMENTAL PCRA PETITION (FILED SEPTEMBER 19, 2022); LETTER (DATED NOVEMBER 15, 2022) INVOLVING ILLEGAL SENTENCE DUE TO MERGER [AND IDENTIFIED IN THE TRIAL COURT OPINION/TCO AS "SECOND SUPPLEMENTAL PCRA PETITION"); "JUDICIAL NOTICE OF ADJUDICATIVE MATERIAL FACTS, PURSUANT TO PA. R. E. 201; ALTERNATIVELY, WRITTEN OBJECTIONS AND RESPONSE TO NOTICE PURSUANT TO PA.R.CRIM.P. 907(1) [HEREAFTER, "JUDICIAL NOTICE I] AND "JUDICIAL NOTICE OF ADJUDICATIVE [RELEVANT AND MATERIAL] FACTS PURSUANT TO PENNSYLVANLA RULES OF EVIDENCE 201 ET SEQ. (INVOLVING SUNDAY, JUNE 11, 2023 PHILADELPHIA INQUIRER NEWSPAPER ARTICLE [HEREAFTER, "JUDICIAL NOTICE II"])(FILED JUNE 19,2023)," WITHOUT PROVIDING AN EVIDENTIARY HEARING, RIGHT TO BE HEARD ON CLAIMS, FACTS, AND ISSUES SUPPORTED BY INDISPUTED EVIDENCE.

II. THE COURT BELOW COMMITTED REVERSIBLE ERROR BY FAILING TO PROVIDE APPELLANT WITH A COPY OF THE COMMONWEALTH'S RECENT FILING, WITH AN OPPORTUNITY TO RESPOND TO THAT FILING AND CLAIM, AFTER APPELLANT INFORMED THE COURT THAT HE NEVER RECEIVED A COPY OF THE COMMONWEALTH'S RESPONSE—PRIOR TO THE COURT'S SEPTEMBER 8, 2023 DISMISSAL ORDER—AND REQUESTED A FAIR AND OF FULL OPPORTUNITY TO FILE ANY NEEDED RESPONSE TO THAT FILING BEFORE THE COURT MADE ITS RULING THERETO.

III. THE ABOVE DUE PROCESS VIOLATIONS, REQUIRE REMAND FOR A FAIR AND FULL OPPORTUNITY OF ADEQUATE NOTICE, WITH AN OPPORTUNITY TO BE HEARD ON THE CLAIMS RAISED IN THE RESPONSE/ANSWER FILED BY THE COMMONWEALTH; AND A FAIR AND FULL OPPORTUNITY TO BE HEARD ON THE

CONTRADICTING EVIDENCE OF COMMONWEALTH TRIAL WITNESSES RICHARD BASCIANO/STB INVESTMENTS; ARCHITECT PLATO MARINAKOS, AND THE SALVATION ARMY PRESENTED IN THE JUNE 11, 2023 PHILADELPHA INQUIRER NEWSPAPER ARTICLE ABOUT THE JUNE 5, 2013 MARKET STREET BUILDING COLLAPSE THAT EXONERATES APPELLANT OF THE UNDERLYING OFFENSES IN THIS MATTER AND A NEED FOR DISCOVERY AND DEVELOPMENT OF THE RECORD FOR APPELLATE REVIEW ON THIS AFTER DISCOVERED EVIDENCE.

IV. WHETHER THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO EXPLAIN ITS REASONS FOR THE DENIAL AND DISMISSAL OF THE TWO ALLEGATIONS OF PETITIONER'S RIGHT TO THE SIXTH AND FOURTEENTH AMENDMENT GUARANTEE OF THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS RAISED IN HIS SEPTEMBER 1, 2022 PCRA PETITION, WITHOUT A FULL AND FAIR OPPORTUNITY TO DEVELOP THE RECORD BELOW, TO SUBSTANTIATE HIS CLAIM OF INEFFECTIVE ASSISTANCE OF THE RIGHT TO BE HEARD UNDER THE DUE PROCESS AND EQUAL PROTECTION OF THE LAW, UNDER COMMONWEALTH V. GRANT, STRICKLAND V. WASHINGTON, MCMANN V. RICHARDSON, AND PA.R.CRIM.P. 907 (1) GUARANTEE?

V. WHETHER THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO EXPLAIN ITS REASONS FOR THE DENIAL AND DISMISSAL OF THE PETITIONER'S NOVEMBER 19, 2022 SUPPLEMENTAL CLAIM CHALLENGING THE LEGALITY OF SENTENCE CLAIM UNDER COMMONWEALTH V. VINCENT SMITH (2022 PA SUPER 179, NO. 1256 WDA 2021 (FILED OCTOBER 17, 2022)); COMMONWEALTH V. CONLEY, (2022 PA SUPER 201, 2022 PA. SUPER. LEXIS 4612022 (NO. 935 WDA 2021 (FILED NOVEMBER 22, 2022)); AND 42 PA.C.S. SECTION 9765 ("NO CRIMES SHALL MERGE FOR SENTENCING PURPOSES UNLESS THE CRIMES ARISE FROM A SINGLE CRIMINAL ACT AND ALL OF THE STATUTORY ELEMENTS OF ONE OFFENSE ARE INCLUDED IN THE STATUTORY ELEMENTS OF THE OTHER OFFENSE. WHERE CRIMES MERGE FOR SENTENCING PURPOSES, THE COURT MAY SENTENCE THE DEFENDANT ONLY ON THE HIGHER GRADED OFFENSE") WHERE UNDER COUNSEL'S ACTIONS, FAILURE TO FILE A 2119 (F) STATEMENT DURING APPEAL, THE COURT DECLARED THIS CLAIM WAIVED, AND REFUSED TO GRANT PETITIONER THE RELIEF HE WAS ENTITLED TO ON THIS ILLEGAL MERGER AND SENTENCE, WHEN ONE SINGLE ACT (I.E.,

BUILDING COLLAPSE) RESULTED IN ALL THE CONSECUTIVELY] IMPOSED SENTENCES, IN VIOLATION OF SMITH; CONLEY; 42 PA.C.S. § 9765; THE EIGHTH AND FOURTEENTH AMENDMENT GUARANTEES, AS WELL AS THE CORRESPONDING STATE CONSTITUTIONAL GUARANTEES PERTAINING TO SENTENCING AND MERGER?

VI. WHETHER THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO EXPLAIN ITS REASONS FOR THE DENIAL AND DISMISSAL OF THE PETITIONER'S SEPTEMBER 19, 2022 SUPPLEMENTAL PCRA PETITIONS CLAIM THAT TRIAL COUNSEL'S DISCIPLINARY SUSPENSION OF FEBRUARY 11, 2022 SHOULD BE CONSTRUED AS A "NEW FACT" THAT "MAY CHANGE THE OUTCOME OF RULINGS RENDERED PREVIOUSLY IN THIS MATTER" WHEN AS A RESULT OF TRIAL COUNSEL'S FAILURE TO FILE PLEADINGS, MOTIONS, 2119 STATEMENTS AT THE TIME, AND IN THE MANNER PROSCRIBED BY THE RULES GOVERNING CRIMINAL AND APPELLATE PROCEDURE, MERITORIOUS CLAIMS WERE RULED WAIVED BY THE TRIAL AND APPELLATE COURTS, DEPRIVING PETITIONER OF THE RELIEF HE WAS ENTITLED TO ON HIS CLAIMS, WHICH CONTRIBUTED TO TRIAL COUNSEL LATER BEING SUSPENDED BY THE PENNSYLVANIA SUPREME COURT FOR FAILING TO FOLLOW THE RULES GOVERNING CRIMINAL, CIVIL AND APPELLATE PROCEDURE IN CLIENT CASES; HOWEVER, NO EVIDENTIARY HEARING WAS HELD ON THE CLAIM, TO ALLOW THE PRO SE APPELLANT/PETITIONER A FULL AND FAIR OPPORTUNITY TO BE HEARD, AND TO DEVELOP THE RECORD, BY SUBSTANTIATING HIS CLAIM AND ENTITLEMENT TO RELIEF FOR APPELLATE REVIEW/COURTS, IN ACCORDANCE WITH THE DUE PROCESS AND EQUAL PROTECTION OF THE LAW CLAUSES OF THE STATE AND FEDERAL CONSTITUTIONS, WELL ESTABLISHED PRECEDENTS, AND THE RULES GOVERNING CRIMINAL, CIVIL AND APPELLATE PROCEDURE?

VII. WHETHER THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO EXPLAIN ITS REASONS FOR DENIAL AND DISMISSAL OF PETITIONER'S SEPTEMBER 1, 2022, SEPTEMBER 19, 2022, AND NOVEMBER 19, 2022 PETITIONS, WITHOUT PROVIDING PRO SE APPELLANT COPIES OF THE COMMONWEALTH'S RESPONSE/ANSWER TO ANY OF HIS PRO SE FILINGS (I) SEPTEMBER 1, 2022 PCRA PETITION; (II) SEPTEMBER 19, 2022 SUPPLEMENTAL PCRA PETITION; (III) NOVEMBER 19, 2022 LETTER SUPPLEMENTAL CLAIM (ILLEGAL

SENTENCE/MERGER)[PCRA PETITION]; IV) "JUDICIAL NOTICE OF ADJUDICATIVE MATERIAL FACTS, PURSUANT TO PA. R.E. 201; ALTERNATIVELY, WRITTEN OBJECTIONS AND RESPONSE TO NOTICE PURSUANT TO PA.R.CRIM.P. 907 (1) [HEREAFTER, " JUDICIAL NOTICE I"] AND (V) JUNE 19, 2023 "JUDICIAL NOTICE OF ADJUDICATIVE [RELEVANT AND MATERIAL] FACTS PURSUANT TO PENNSYLVANIA RULES OF EVIDENCE 201 ET SEQ. (RELATING TO SUNDAY, JUNE 11, 2023 PHILADELPHIA INQUIRER NEWSPAPER ARTICLES) [HEREAFTER, "JUDICIAL NOTICE II"]," VIOLATING PA.R.CRIM.P. 113, 114, 576 AND THE RULES GOVERNING PCRA AND HABEAS CORPUS PROCEEDINGS, DUE PROCESS AND THE EQUAL PROTECTION OF LAW, AND THE RIGHT TO RESPOND AND BE HEARD (PA.R.E. 201(E))?

VIII. WHETHER THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO ALLOW APPELLANT TO PARTICIPATE IN AN EVIDENTIARY HEARING TO DEVELOP THE RECORD, TO SUBSTANTIATE HIS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL, WHERE COUNSEL FAILED TO: (I) MOVE FOR A JUDGMENT NOTWITHSTANDING THE VERDICT ("NON OBSTANTE VERDICTO" OR "N.O.V.") ON THE BASIS THAT THE PROSECUTION FAILED TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT ON THE "THREAT OF SERIOUS [ ] BODILY HARM' ELEMENT" OF AGGRAVATED ASSAULT? (II) TO ADEQUATELY SUPPORT HIS POST-SENTENCE MOTION WITH EVIDENCE THAT APPELLANT WAS NOT PRIVY TO REPORTS AND COMMUNICATIONS CONCERNING THE HAZARDOUSNESS OF THE JOB SITE AND/OR EVIDENCE THAT APPELLANT WAS "LEGALLY BOUND BY THE TERMS OF HIS CONTRACT" TO CONDUCT THE DEMOLITION? (III) COMPLY WITH PROCEDURAL RULES IN FILING CERTAIN PLEADINGS, RESULTING IN THE WAIVER OF NUMEROUS CLAIMS ON APPEAL, AND LATER HIS SECOND SUSPENSION FROM THE BAR BY THE PENNSYLVANIA SUPREME COURT ON FEBRUARY 11, 2022 FOR THESE SAME FAILURES IN OTHER CLIENT CASES?

Appellant's Brief at 3-5.

Appellant's first two arguments allege procedural errors that the PCRA court committed in the course of denying his second PCRA petition. First, Appellant complains that the PCRA court failed to send him its Pa.R.Crim.P.

907 notice of intent to dismiss his second PCRA petition without a hearing.

The PCRA court refuted this claim in its Rule 1925 opinion, stating:

> The Court sent a 907 Notice to [Appellant] by certified mail on March 17, 2023. The 907 Notice addressed, in detail, the Court's reasons for denying the claims in [Appellant]'s Second Petition, Supplemental Petition, and Second Supplemental Petition. [Appellant] requested additional time to file a response to the Court's 907 Notice on April 4, 2023. The Court granted this request and gave [Appellant] until May 10, 2023 to respond to the Court's 907 Notice. [Appellant] responded on April 13, 2023 with his First 907 Response. [Appellant] filed his Second 907 Response on May 3, 2023. Upon receipt of these responses, the Court directed the Commonwealth to respond to [Appellant]'s pleadings. Ten days before the Commonwealth was due to file their response, [Appellant] filed his Third 907 Response on June 20, 2023. On June 30, 2023, the Court directed the Commonwealth to respond to all three of [Appellant]'s 907 responses in one consolidated filing. The Commonwealth filed this response on August 2, 2023.
>
> The Court reviewed all the pleadings and determined that [Appellant]'s petition was untimely and that none of the proffered evidence set forth in [Appellant]'s three 907 responses cured the untimeliness of the [Appellant]'s petition. Accordingly, [Appellant] was provided with adequate, detailed notice of the Court's intent to dismiss his petition without a hearing. [Appellant] responded to the Court's 907 Notice three times but failed to cure his petition's timeliness issues. No relief is due.

Pa.R.A.P. 1925 Opinion, 12/1/23, at 12-13. The record supports the PCRA court's summary of events, and we agree with the court's analysis.

Next, Appellant argues that he never received the Commonwealth's August 2, 2023 response to his Rule 907 filings. The PCRA court refuted this claim in its opinion, stating:

> [Appellant], by letter dated August 9, 2023, requested the Commonwealth's 907 Response and an opportunity to respond to it. In response, the Court sent [Appellant] a letter on August 14,

> 2023, and enclosed the Commonwealth's 907 Response therein. On August 25, 2023, the Court received another letter from [Appellant], stating that the Commonwealth's 907 Response was not included with the letter and requested another copy and the opportunity to respond. However, at that point, the Court had already reviewed all of [Appellant]'s pleadings, including all three 907 responses, along with the Commonwealth's pleadings. After that review, the Court determined that [Appellant] had not cured any of the defects highlighted in the Court's 907 Notice, even though [Appellant] was granted an extension to respond and filed three 907 responses in the nearly six months between the issuance of the 907 Notice and dismissal. [Appellant] was not entitled to file additional pleadings after responding to the Court's 907 Notice. No relief is due.

Opinion at 13-14. Once again, we agree with the PCRA court's analysis. Appellant is not entitled to relief on this claim.

We turn to Appellant's arguments that newly discovered evidence entitled him to seek and obtain PCRA relief beyond the PCRA's one-year statute of limitations.

Preliminarily, we observe that all PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless an exception to timeliness applies. 42 Pa.C.S.A. § 9545(b)(1). The one-year time limitation can be overcome if a petitioner (1) alleges and proves one of the three exceptions set forth in Section 9545(b)(1)(i)-(iii) of the PCRA, and (2) files a petition raising this exception within one year of the date the claim could have been presented. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). "The PCRA's time restrictions are jurisdictional in nature. Thus, if a PCRA petition is untimely, neither this Court nor the [PCRA]

11

court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." ***Commonwealth v. Myers***, 303 A.3d 118, 121 (Pa. Super. 2023).

In this case, Appellant's judgment of sentence became final on Monday, April 29, 2019, ninety days after the Supreme Court denied his petition for allowance of appeal. Therefore, Appellant's deadline for filing a PCRA petition was April 29, 2020. The present petition, Appellant's second, is facially untimely, having been filed over two years later.

Appellant invokes the newly discovered facts exception, 42 Pa.C.S.A. § 9545(b)(1)(ii), in an attempt to avoid the one-year statute of limitations. This exception requires the petitioner to plead and prove that (1) the facts upon which the claim is predicated were unknown, and (2) these unknown facts could not have been ascertained by the exercise of due diligence. ***Myers***, 303 A.3d at 121. "The focus of [this] exception is on the newly discovered *facts*, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008) (emphasis in original). "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned [of] the new fact(s) earlier with the exercise of due diligence." ***Commonwealth v. Williams***, 35 A.3d 44, 53 (Pa. Super. 2011). Further, the "fact" on which the petitioner predicates his claim to an exception to the time-bar must bear some logical connection to a plausible claim for relief. ***See***

***Commonwealth v. Robinson***, 185 A.3d 1055, 1062 (Pa. Super. 2018) (*en banc*).

Appellant's first claim of newly discovered evidence concerns a June 11, 2023, article from the Philadelphia Inquirer entitled "Fear of Collapse in Philly." The article is part of a series on construction safety in Philadelphia and was written to explore the changes made to Philadelphia's demolition and construction regulations on the tenth anniversary of the building collapse for which Appellant was convicted. Appellant focuses on a section of the article discussing architect Plato Marinakos, a Commonwealth witness at trial and the architect in charge of monitoring the progress of the demolition. This section of the article includes a brief history of the collapse, the fact that Marinakos was the architect overseeing the demolition of the building, and that Marinakos was "one of the design professionals on the permit" of a building that collapsed in Philadelphia's Fishtown neighborhood in 2022. According to Appellant, this article is "after-discovered evidence" that exonerates him of the crimes for which he was convicted.

We agree with the PCRA court that there are no relevant new facts contained in the article. The article presents a brief recitation of the facts surrounding the collapse. To that extent, the article does not present any previously unknown facts. The fact that Marinakos was the architect overseeing the building's demolition was known to Appellant at the time of trial, and the facts of the collapse were established at Appellant's trial in much

greater detail than the newspaper article. Thus, the article is merely a newly discovered source for previously known facts. **See Commonwealth v. Lopez**, 249 A.3d 993, 999 (Pa. 2021) (newly discovered fact exception is focused on the newly discovered fact and not a newly discovered source for previously known facts).

The only new piece of information presented in the article is that Marinakos was listed as "one of the design professionals on the permit" of a building that collapsed in 2022. However, this fact would not have been admissible had it been available during Appellant's trial. The article does not state that Marinakos was responsible for the 2022 collapse but only states that he was a design professional on the permit. Furthermore, the 2022 building collapse occurred nearly ten years after the events in Appellant's case. Evidence that Marinakos was a design professional on a permit for a building involved in a separate and unrelated collapse nearly ten years after the events in Appellant's case would have been precluded as irrelevant at Appellant's trial. Thus, this evidence is not a "newly discovered fact" within the scope of the exception under Section 9545(b)(1)(ii) because it "could not possibly matter" in the context of this case. **See Robinson**, 185 A.3d at 1061-62.

Next, Appellant argues that he discovered prior counsel's ineffective assistance on August 31, 2022, and that this discovery constitutes a newly discovered fact under Section 9545(b)(1)(ii). Specifically, Appellant contends

he learned about appellate counsel's failure to file a Rule 2119(f) statement in his brief on direct appeal,[1] trial counsel's failure to call two witnesses during trial, and PCRA counsel's failure to raise those claims in his first PCRA petition.

This argument fails because ineffective assistance of counsel is not a "new fact" within the meaning of the newly discovered facts exception to the PCRA's time-bar. *See Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 785 (Pa. 2000). We realize that our Supreme Court recently held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021). *Bradley*, however, does not help Appellant, because "[n]othing in *Bradley* creates a right to file a second PCRA petition outside the PCRA's one-year time limit as a method of raising ineffectiveness of PCRA counsel or permits recognition of such a right." *Commonwealth v. Stahl*, 292 A.3d 1130, 1136 (Pa. Super. 2023).

Continuing, Appellant claims that the Court erred by failing to explain its reasons for denying the claim in his second PCRA petition challenging the legality of his sentence under *Commonwealth v. Smith*, 2022 WL 9627218

_____

[1] Pa.R.A.P. 2119(f) requires an appellant who wishes to challenge the discretionary aspects of sentencing to include in his brief a separate statement demonstrating that he is raising a substantial question concerning the sentence.

15

(Pa. Super., Oct. 17, 2022) (unpublished memorandum), ***Commonwealth v. Conley***, 286 A.3d 313 (Pa. Super. 2022), and 42 Pa.C.S.A. § 9765. Appellant argues that under ***Smith*** and ***Conley***, his sentences of REAP should have merged with involuntary manslaughter for sentencing, and his involuntary manslaughter sentences also should have merged for sentencing. Appellant states that he learned about this issue in November 2022, and that ***Smith*** and ***Conley*** make his claim timely. We disagree.

To begin, the unpublished memorandum in ***Smith*** that Appellant relies upon was withdrawn and replaced by an *en banc* opinion, ***Commonwealth v. Smith***, 298 A.3d 1140 (Pa. Super. 2023), which held that the defendant's sentences in that case did not merge for purposes of sentencing. ***See id.*** at 1141 (four counts of arson endangering persons did not merge because defendant may be convicted of and sentenced on separate counts where there is one arson but more than one victim). Appellant fails to explain how our *en banc* opinion in ***Smith*** advances his merger argument. Furthermore, and in any event, neither ***Smith*** nor ***Conley*** make Appellant's claim timely, because judicial determinations are not "new facts" within the meaning of the newly discovered fact exception to the PCRA's jurisdictional time-bar. ***Commonwealth v. Reid***, 235 A.3d 1124, 1146 (Pa. 2020) ("judicial determinations do not satisfy the newly discovered fact exception" because judicial opinion "is law, for it is simply the embodiment of abstract principles

16

applied to actual events. The events that prompted the analysis . . . are regarded as fact"). Accordingly, this claim is time-barred.

Next, Appellant claims that the PCRA court erred by denying his argument that trial counsel's disciplinary suspension of February 11, 2022, is not a new fact under Section 9545(b)(1)(ii). Appellant states that trial and appellate counsel, William Hobson, was suspended from practicing law in the Commonwealth of Pennsylvania on February 11, 2022. Appellant argues that Hobson was suspended for his mishandling of cases and incorrectly filing pleadings, and that he did the same thing in Appellant's case. Appellant further contends that Hobson's failure to comply with procedural rules, failure to provide supporting proof and evidence, and failure to file necessary motions resulted in the waiver of numerous claims on appeal and prejudiced the Appellant. Finally, Appellant contends that this claim is timely raised within one year of Hobson's suspension.

The PCRA court properly determined that Hobson's suspension is not a "newly discovered fact" within the meaning of the PCRA's time-bar exception. The PCRA court observed that Hobson was suspended for mishandling three client matters in April 2018. None of these three matters pertain in any way to Appellant or Appellant's case. Therefore, the evidence of Hobson's suspension provides no evidence that he committed any misconduct in Appellant's case. Accordingly, counsel's suspension "could [not] possibly

17

matter" in context of this case and does not satisfy the newly discovered fact exception to the PCRA's time-bar. ***Robinson***, 185 A.3d at 1061-62.

Lastly, Appellant argues that the PCRA court erred in denying his motion for an evidentiary hearing. "It is well settled that [t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Maddrey***, 205 A.3d 323, 328 (Pa. Super. 2019) (citation omitted). Further, where a petitioner seeks the reversal of a PCRA court's decision to dismiss his petition without a hearing, he must show that "he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Id.*** at 328. For the reasons provided above, the PCRA court correctly determined that Appellant's petition failed to raise any genuine issues of fact which, if resolved in his favor, would have entitled him to relief.

Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/1/2024

18